TRIESCHMAN ET VIR. *v.* EATON ET AL.

[No. 96, September Term, 1960.]

112

*Decided January 13, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND and HORNEY, JJ.

*Paul R. Connolly,* with whom were *Calvin E. Cohen* and
*Hogan & Hartson* on the brief, for the appellants.

*G. C. Anderson,* with whom were *William O. Doub, Bart-
lett, Poe & Clagett* and *Anderson, Barnes, Coe & King* on the
brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

In 1954 Irene Trieschman received multiple injuries, in-
cluding fractures of both bones of the left leg, when she was
struck by an automobile owned and driven by Francis O'Neill.
Mrs. Trieschman alleges that she was admitted to Johns
Hopkins Hospital and attended by Dr. George Eaton who in-
serted an orthopedic steel plate, supplied by the Hospital, in
the left leg to accomplish fixation of a fracture. She says
the plate broke while in the leg, destroying the union which
had occurred at the site of the fracture, and necessitating an-
other operation, bone grafting and other procedures designed
to effect union. It is claimed that disability was prolonged
and expense increased greatly, and that a permanent leg de-
fect resulted.

In 1957 Mrs. Trieschman and her husband, the appellants, sued Dr. Eaton and Hopkins Hospital, the appellees (who will be hereinafter referred to as "the doctor"), asserting negligence, medical malpractice and breach of warranty (in the sale of the plate by the Hospital).[1]

Judge Oppenheimer granted summary judgment for the defendants-appellees on the ground the Trieschmans had earlier released O'Neill, the original tortfeasor, and that this was satisfaction of all claims of the Trieschmans and discharged the doctor. It appears the Trieschmans first sued O'Neill, and because he was uninsured and of limited financial resources, entered into a deferred payment arrangement in 1956. This took the form of a consent judgment for $10,000 and the execution of an "agreement" between the parties, providing (a) that the judgment would be paid at the rate of $40.00 a month (with no interest and a grace period during winter months for late payments); (b) that as far as the Trieschmans were concerned O'Neill could have his driving privileges reinstated by the Department of Motor Vehicles; (c) that the Trieschmans would not seek to enforce or collect the judgment as long as the stipulated payments were promptly made; and (d) that upon payment in full of the $10,000 judgment O'Neill "shall be released and discharged from any further liability * * *."

Appellants seem to assume, appellees suggest, and Judge Oppenheimer held that the 1956 agreement "has the effect of a release to the same extent as though it had been in the more usual form." On this premise appellants seek to avoid the

---

1. The disposition we make of the case renders it unnecessary to discuss the claim against the hospital arising from breach of warranty in the sale of the steel plate alleged to have been defective. Appellants treat the matter as if the hospital were charged only with negligence; appellees say that a negligent actor cannot be a joint, concurrent or successive tortfeasor with one charged with breach of warranty. At least one Court has so said, holding that a release of the original tortfeasor was not a bar to a later action against a physician for breach of contract in not skilfully performing his agreement properly to treat the injured person. Von Blumenthal v. Cassola, 3 N. Y. S. 2d 246, affirmed without opinion, 6 N. Y. S. 2d 342.

114

rule applied by the trial court that the release of one tortfeasor discharges another who has caused or contributed to the same harm, on two main grounds. First, they claim the Uniform Contribution among Tort-Feasors Act, Code (1957), Art. 50, Secs. 16 to 24 (hereinafter called "the Act"), controls whether O'Neill and the doctor were joint tortfeasors or concurrent or successive tortfeasors. Section 16 of the Act says: *"'joint tortfeasors'* means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." It is urged that the definition is broad enough to encompass all negligent actors whose wrongs either produced or coalesced to result in, or contribute to, the same harm.

Section 19 provides that the release by the injured person, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides but reduces the claim against the others in the amount paid for the release or in any amount or proportion stipulated if greater than the consideration paid. Therefore, if appellants are right in their contention that the Act embraces O'Neill and the doctor, the 1956 compromise with O'Neill did not discharge the doctor since it did not purport to do so.

Appellants' second main contention is that apart from and without regard to the Act, the release of O'Neill did not discharge the doctor under the holdings of recent cases in three states which have refused to apply the rule of the majority of the states which is that, in the absence of statute, the release of one tortfeasor discharges others who have caused or contributed to the same harm, whether the tortfeasors be joint, concurrent or successive.

Appellees join appellants in recognizing the established principle that the first tortfeasor is liable for the additional damage added to the original harm by the acts of a negligent doctor (who, of course, is also liable for the additional damage). Restatement, *Torts,* Sec. 457 (Illustration 1), and Restatement, *Torts,* Sec. 879 (Illustration 3). Appellees' real contentions are that O'Neill and the doctor are not joint tortfeasors apart from statute, are not joint tortfeasors under the

Act, and that the overwhelming weight of authority is that a release of the original wrongdoer releases the doctor. In this last contention they are right. Almost all of the States have so held. The cases are collected in a comprehensive annotation in 40 A. L. R. 2d 1075. A number of these cases have held that the original wrongdoer and the doctor who negligently aggravated the harm were not joint tortfeasors.[2] In none of these cases was there involved a statute defining joint tortfeasors as broadly as does the Act. The definition in the Act making those jointly *or* severally liable for the same injury literally embraces successive wrongdoers liable for the same harm even though one may be also liable to the injured person for additional damages. The Supreme Court of Arkansas apparently took this view in *Applegate v. Riggall,* 318 S. W. 2d 596, on the strength of the definition in the Arkansas statute, identical with the Act, and the further statutory provision that other parties liable for all or a part of the claim against an original defendant could be impleaded.[3]

The reasoning of the majority decisions generally is that since the original wrongdoer is liable for the additional damages resulting from the acts of the doctor and there can be but one satisfaction for the same injury, the satisfaction of the injured person by the first negligent actor does away with all right of action against the second. The consideration paid for the release or the payment of a judgment against the original tortfeasor is either presumed or assumed by the opinions

2. Some are: Parchefsky v. Kroll Bros. (N. Y.), 196 N. E. 308, 310; Mier v. Yoho (W. Va.), 171 S. E. 535; Staehlin v. Hochdoerfer (Mo.), 235 S. W. 1060; Bolick v. Gallagher (Wis.), 67 N. W. 2d 860, 863; Fisher v. Milwaukee Elec. Ry. & Lt. Co. (Wis.), 180 N. W. 269; Bost v. Metcalfe (N. C.), 14 S. E. 2d 648.

3. The difficulty in determining a joint tort was emphasized by Prosser in his article, "Joint Torts and Several Liability" in 25 Cal. L. Rev. 413. He said: "Nobody knows what exactly is a joint tort" and added that the term means different things to different courts and often to the same court largely because the extension of the original common law meaning of those who acted in concert has been made with reference and relation to procedural statutes or rules as to joinder and substantive law indiscriminately, with resulting confusion and complications. See also 17 Texas L. Rev. 399, 403.

to have constituted full satisfaction. Some courts have softened the severity of the rule as to release by holding that a covenant not to sue or a release specifically reserving rights against others than the one released, do not absolve other tortfeasors involved. This Court has been less flexible in tort cases, as *Maryland Lumber Co. v. White,* 205 Md. 180, 198, observes by reference to earlier cases. One of these earlier cases, *Lanasa v. Beggs,* 159 Md. 311, 319-321, had held that the consideration accepted for executing a covenant not to sue, which reserved a right to proceed against other wrongdoers involved, constituted full satisfaction in the eyes of the law for the injury suffered, so that the covenant barred all further action and the reservation of rights was nugatory. The opinion, citing *Cox v. Maryland Electric Railways Co.,* 126 Md. 300, with approval, said: "Although the rule in this jurisdiction is that the injured party may bring separate suits against the wrong-doers, and proceed to judgment in each, and that no bar arises as to any of them until satisfaction is received, yet the party injured may have but one satisfaction. So, if as a matter of fact the wronged party has actually received satisfaction, or what in law is regarded as its equivalent, from one tort-feasor, he is barred from proceeding against the other tort-feasors. * * * This full satisfaction may assume the form either of a release, as in *Gunther v. Lee,* 45 Md. 60; of an entry of settlement upon the court docket in a pending action, as in *Cox v. Md. Elec. Rwys. Co.,* 126 Md. 300; of a payment or tender of the amount of a judgment previously recovered against one tort-feasor, as in *Berkley v. Wilson,* 87 Md. 219; or of an accord and satisfaction, as in *Stockton v. Frey,* 4 Gill 406, 412, 413. * * * While the full satisfaction may be made these various ways, every one has the effect and quality of its form * * * and whether the evidence of a full satisfaction is a specialty or rests upon a parol agreement which is supported by consideration, the effect of the document or the parol testimony depends upon the intention of the parties as appears from their written or spoken words." [4]

---

4. The experts in this field agree that the distinction between satisfaction in form and satisfaction in fact should be determined

The rule that there could be but one satisfaction of the same wrong originated at common law in the case of joint tortfeasors because there was but one cause of action—that against both. In the beginning independent wrongdoers liable for the same loss were not absolved by the release of one. Gradually the rule of released governing joint wrongdoers was extended to independent tortfeasors and it has become the law of most of the States. It was declared to be the law of this State in *Cox v. Maryland Elec. Rwys. Co., supra.* The Court held that where one concurrent tortfeasor, who had been sued, paid an agreed amount in full to the injured person who caused to be made a docket entry in the case of "agreed and settled and all claims therein satisfied," there had been full satisfaction which discharged the other tortfeasor and barred a subsequent suit against him. The Court said that unlike the rule in some States, in Maryland "it is not essential that the party with whom the settlement is made or by whom the release is given shall be a joint *tort feasor* in order to release others from liability."

The opinions relied on by the Trieschmans in California, Minnesota and New Jersey are by Courts which either had

in every case and control the result. Prosser, Torts, Sec. 46 (2d Ed.), pp. 243-244. "There is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration. * * * Most of the courts have continued to hold that a release to one of two concurrent tortfeasors is a complete surrender of any cause of action against the other, without regard to the sufficiency of the compensation actually received * * *. This result has been justly condemned. * * * Historically, and logically, it has no justification, since causes of action against mere concurrent tortfeasors not acting in concert have always been separate * * * and a surrender of one therefore should not discharge the other, except to the extent that there has been full compensation. * * * The fear of double recovery is meaningless, since the amount paid under the release must be credited to the second tortfeasor in any case." See also 1 Harper & James, Torts, Sec. 10.1, p. 710, et seq., and opinion of Judge Rutledge for the Court of Appeals for the District of Columbia in McKenna v. Austin, 134 F. 2d 659, 664, which repudiated the common-law rule and adopted the reasoning of Prosser and Harper and James.

not before followed the rule that the release of one concurrent or successive tortfeasor discharged the other, or repudiated it in reaching the result that the injured person could sue the doctor, although he had compromised his claim against the original wrongdoer.[5] These cases hold in essence that unless the release in terms discharges the other tortfeasors or the amount paid for the release was intended to be and was full satisfaction, the earlier settlement does not bar the subsequent suit.

Prosser, *op. cit.*, Sec. 46, p. 244, opines that the rule that all joint tortfeasors are released by the release of one, "seems at best an antiquated survival of an arbitrary common-law procedural concept, and it has no reasonable application to cases of mere concurrent negligence." An appealing argument can be made that since the Maryland Legislature did away with the rule as to joint tortfeasors by the passage of the Act, the foundation and reason for the same rule being applicable to concurrent tortfeasors was done away with, and this Court should so recognize.

Interesting as are the questions posed by the contentions of the parties, in the view we take of the case we do not reach the need to decide at which the judicial finger of approval shall be pointed. We think it plain that the "agreement" of 1956 between O'Neill and the Trieschmans was not a bar to action against the doctor. The agreement was not a release as to which a presumption of satisfaction might arise; it was but a promise to release if and when all payments agreed on were made.

The proviso that when the full $10,000 had been paid O'Neill "shall be released and discharged" was no more than a declaration of what would have been true without it. The payment of a judgment is satisfaction and constitutes discharge of the judgment debtor, and it is the fact of payment, not the entry of it, that constitutes the satisfaction. 2 Poe,

---

5. Appellants rely on Ash v. Mortensen (Cal.), 150 P. 2d 876; Dickow v. Cookinham (Cal. App.), 266 P. 2d 63; Couillard v. Charles T. Miller Hosp., Inc. (Minn.), 92 N. W. 2d 96; Daily v. Somberg (N. J.), 146 A. 2d 676; see also Bolick v. Gallagher (Wis.), 67 N. W. 2d 860, 863.

*Practice,* Sec. 400, p. 374 (5th Ed.); *Neidig v. Whiteford,* 29 Md. 178; *Downey v. Forrester,* 35 Md. 117.

All that the agreement to settle amounted to in essence and substance was the entry of a judgment payable over more than a twenty-year period in small monthly instalments. It is obvious on the slightest reflection that if O'Neill defaulted, the Trieschmans had nothing but a partially satisfied judgment against an execution proof debtor. This only serves to put in clear focus that they had no more, at the time they sued the doctor.

It is established that an unsatisfied judgment held by an injured person against one tortfeasor does not discharge another responsible for the same harm. "It is now held everywhere that an unsatisfied judgment against one tortfeasor does not bar an action against another." Prosser, *Torts,* Sec. 46, p. 242. To the same effect are 1 Harper & James, *Torts,* Sec. 10.1, p. 709; Restatement, *Judgments,* Sec. 94. Maryland is in accord. *Lanasa v. Beggs, supra.* The Act explicitly so provides in Section 18 as to those within its coverage.[6]

It is likewise generally held that partial satisfaction of a judgment against one tortfeasor will not discharge another also liable for the same harm. Prosser, *op. cit.,* Sec. 46, p. 242, says: "Even a partial satisfaction of one judgment will not prevent obtaining or enforcing another, although it must be credited *pro tanto* against the amount to be collected." Restatement, *Judgments,* Sec. 95, says in the black letter statement that satisfaction of a judgment against one of several persons, each of whom is liable for a tort, discharges the others but observes in Comment e: "A partial satisfaction

---

6. The Courts have differed as to whether the language of Sec. 18 of the Act permits the injured person to obtain satisfaction of the judgment against one tortfeasor and still not lose his rights against another. The Supreme Court of Rhode Island held in Hackett v. Hyson, 48 A. 2d 353 (1946), that it did; the Supreme Court of Pennsylvania in Hilbert v. Roth, 149 A. 2d 648 (1959), and the United States District Court for the Middle District of Pennsylvania held in Raleigh v. Peterson, 165 F. Supp. 47 (1958), both held that it did not, so that the common law rule that satisfaction barred further action was the law of the Uniform Act.

of a judgment operates to diminish the amount of a claim against other persons liable for the same harm or upon the same obligation in the same way that a payment before judgment diminishes the claim." Restatement, *Torts,* Sec. 886, the black letter tort counterpart of Sec. 95 of Restatement, *Judgments,* says in Comment d that a partial satisfaction of a judgment diminishes the amount of a claim against another judgment debtor in the same way as payment by one liable for a harm diminishes claims against others also liable for the harm, whether or not represented by judgment, as explained in Sec. 885(3). Sec. 885 provides in (1) that a valid release of one tortfeasor, reserving no rights against others, discharges all others liable for the same harm. Sec. 885(3) says: "Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person." To the same effect are *Lovejoy v. Murray,* 3 Wall. (70 U. S.) 1, 18 L. Ed. 129; *McVey v. Marratt* (Iowa), 45 N. W. 548; *United States v. Silliman,* (C. C. A. 3rd) 167 F. 2d 607, 613, cert. den. 335 U. S. 825, 93 L. Ed. 379; *Shainwald v. Lewis,* 46 Fed. 839; 50 C.J.S. *Judgments,* Sec. 761, p. 288; Annotations in 166 A.L.R. 1108; 65 A.L.R. 1090; 27 A.L.R. 811. Compare *Hughes v. O'Donnell,* 2 H. & J. 324; *Jones v. Ricketts,* 7 Md. 108; *Campbell v. Booth,* 8 Md. 107.

The arrangement between O'Neill and the Trieschmans amounted to no more than a judgment which at the time suit was filed against the doctor was but partially satisfied. It is apparent that the arrangement was no more satisfaction in fact than it was in the eyes of the law, and therefore that the doctor was not absolved from whatever responsibility he may have to the Trieschmans, if any, and that the Trieschmans' right to proceed against him was not barred as a matter of law.

*Judgment reversed, with costs, and case remanded for further proceedings.*