## GRANTHAM, ET AL. *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY

[No. 305, September Term, 1967.]

*Decided October 8, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH,
JJ.

*Thomas P. Smith* and *William L. Kaplan,* with whom were *Feissner, Kaplan, Miller & Smith* and *Karl G. Feissner* on the brief, for appellants.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett, Powers & Channing* and *Martin H. Freeman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This controversy stems from a malpractice action instituted on 12 May 1966 in the Circuit Court for Prince George's County. The plaintiffs were Vincent DePaul Grantham, Jr., in his capacity as administrator of the estates of his deceased wife and a deceased infant daughter, and David I. Redmon, as next friend of Vincent DePaul Grantham, Jr., and of Grantham's son, Vincent DePaul Grantham, III, both of whom were minors. For the purposes of this opinion, the plaintiffs will be referred to collectively as "Grantham."

The defendants were two physicians, Dr. Max M. Herzberg and Dr. R. Kennedy Skipton, together with the Board of County Commissioners for Prince George's County (the Board) which operates the Prince George's General Hospital. The defendants were jointly and severally charged with having negligently caused the deaths of Grantham's wife and infant daughter. Other counts of the declaration sounded in breach of contract and of warranty.

The case was tried before a jury which on 14 February 1967 returned verdicts totalling $60,000 against Dr. Skipton and the Board, no negligence having been found as to Dr. Herzberg. On 6 April 1967, the defendants' motion for a new trial was granted. Thereafter, settlement negotiations were entered into between Karl G. Feissner, Esq., who represented Grantham, and Cary M. Euwer, Esq., who represented Dr. Skipton. A figure of $31,802.98 was finally agreed upon, and either Mr. Feissner, or William L. Kaplan, an associate of Mr. Feissner's, prepared a release, in a form intended to come within the provisions of the Uniform Contribution Among Tort-feasors Act,

Maryland Code (1957) Art. 50, §§ 16-24 (the Act) and a "line", or order to dismiss:

> "As to Defendant R. Kennedy Skipton only, please enter this matter as dismissed, with prejudice."

The "line" was signed by Mr. Feissner, and both the "line" and the release were delivered to Mr. Euwer on 19 June 1967.

Because of the fact that minors were involved, Mr. Euwer was insistent that the entry of judgments be a condition of the settlement. He testified:

> "Mr. Feissner and I agreed on a settlement figure, I believe it was possibly in May, and he prepared a release and an order of dismissal, and then he was very anxious to get the draft. And one day Mr. Kaplan came to my office, and in the meantime I had talked to Mr. Pledger, who was Washington counsel for this insurance company, and also to Mr. Bober, who was the claims agent in Chicago, and because there were infants involved they insisted on a judgment being entered. And Mr. Kaplan came in my office and I showed him the check and I said, 'I can't give it to you until we have an entry of judgment. You give me the figures as to how you want this judgment set up and then I will be able to deliver the check after it is signed by the Court.' And he gave me the figures, and then he told me that Mr. Feissner was going to be down here."

Thereafter, according to Mr. Kaplan's testimony, a stipulation was prepared by Mr. Kaplan, apportioning the settlement figure among the several plaintiffs:

> "I think perhaps we have got a conflict here as to the request for a judgment between Mr. Euwer and myself. I recall Mr. Euwer speaking to me about his company requiring a judgment to be entered because of minors. At this point I believe in my haste to get the check I even offered to prepare a judgment. When I got back to the office and discussed it with Mr. Feissner, our discussion reached the point where we

decided we had better not file a judgment, let's do it by stipulation that has the approval of the Court in order to protect the minors under the code. This is the document that was brought to Mr. Euwer's office, this was the document that had the figures and the breakdown of the amounts."

The stipulation, signed by Mr. Feissner, was delivered to Mr. Euwer.

By 11 July 1967, Mr. Euwer had in his possession the release, the "line", and the stipulation. Mr. Feissner was to be engaged in the trial of a criminal case on that day, and when Feissner and Euwer were unsuccessful in their efforts to see the court in the morning, Feissner sent Thomas P. Smith, a law clerk in his office, to see Euwer. Smith and Euwer saw the court in chambers later in the day. The court endorsed a form of approval on the stipulation and then signed an order for the entry of judgments in the amounts set out in the stipulation:

### "ORDER FOR ENTRY OF JUDGMENT

Upon the aforegoing declaration, plea, and settlement stipulation, it is, by the Circuit Court for Prince George's County, Maryland, this 11th day of July, 1967,

ORDERED that judgments be entered herein in favor of plaintiffs in the total amount of $31,802.98, to be apportioned as follows:

In favor of the infant, Vincent DePaul Grantham, III, in the amount of $18,551.74.

In favor of the infant, Vincent DePaul Grantham, Jr., in the amount of $10,600.99.

And in favor of the Estate of Doris Grantham, in the amount of $2,650.25.

/s/ Roscoe H. Parker
Judge"

This order, prepared by Mr. Euwer, had not been seen by Mr. Smith. In an affidavit which he later filed in the case, Mr. Feissner said:

"* * * While your affiant has no independent recol-

lection of ever having seen or approved the 'ORDER FOR ENTRY OF JUDGMENT', signed by the Court and filed on July 11, 1967, and therefore can neither admit nor deny whether such event actually occurred, he feels that in view of the extensive research he had conducted during the preparation of the release referred to above, and his knowledge that a judgment satisfied and paid by one joint tort feasor would release others from liability, if he had seen such an order prior to its submission to the Court, he would not have consented to its form or substance."

The stipulation and the judgments were filed on 11 July, and the settlement check was delivered by Mr. Euwer to Mr. Feissner, who was still engaged in the trial of the criminal case.

On the following day, 12 July, Mr. Euwer filed the "line" or order of dismissal, which had been sent him by Mr. Feissner. As filed, the "line" read:

"As to Defendant R. Kennedy Skipton only, please enter this matter as dismissed, with prejudice, *and the judgment paid and satisfied.*" (Italics added.)

Mr. Feissner denies that he consented to, or had knowledge of, the addition of the italicized phrase.

On 14 August 1967, the Board filed a plea *puis darrein continuance* and a motion for summary judgment on the ground that the satisfaction of the judgments against Skipton resulted in a release of the Board. When this motion was granted, Grantham moved to vacate the judgments, and his motion was denied. From the granting of the motion for summary judgment and the denial of the motion to vacate, this appeal was taken.

### The Denial of the Motion to Vacate

Prior to argument of the case in this Court, Skipton filed a timely motion to dismiss Grantham's appeal from the denial of the motion to vacate the judgments, which after hearing was granted by us on 6 December 1967. On the same day, we denied the Board's motion to dismiss the appeal from the order denying the motion to vacate. In his appeal, Grantham main-

tains that the lower court was in error when it refused to vacate the judgments. We regard the reasons which led us to dismiss the appeal as to Skipton as being equally applicable to the Board.

Since we did not state our reasons then, we will give them now. The judgments were entered on 11 July 1967, and Grantham's motion to vacate was filed on 31 August. Maryland Rule 625 a provides that after 30 days have elapsed from the entry of a judgment the court's revisory power and control may be exercised "* * * only in case of fraud, mistake or irregularity." Grantham does not allege fraud, but relies on the contention that the judgments were entered in consequence of a unilateral mistake, and involved an element of surprise amounting to irregularity. In support of this contention, he relies on *Pinkston v. Swift*, 231 Md. 346, 190 A. 2d 533 (1963).

"* * * As a general rule an enrolled decree may not be reopened or set aside except upon a bill of review for error apparent on the face of the decree or for newly discovered evidence, or upon an original bill for fraud. However, if a case has not been heard on its merits, an enrolled decree may be set aside on a petition filed in the original proceeding where there is a showing that the decree was entered by surprise or mistake, or where the circumstances are such as to satisfy the court in the exercise of a sound discretion that the enrolled decree should be set aside." *Pinkston v. Swift,* 231 Md. 346 at 351, citing *Cramer v. Wildwood Development Co.,* 227 Md. 102, 107, 175 A. 2d 750 (1961); *Kennard v. McKamer Realty Co.,* 224 Md. 490, 496, 168 A. 2d 369 (1961); *Pugh v. Waclawski,* 211 Md. 346, 351, 127 A. 2d 376 (1956).

*See also, Bell v. Shifflett,* 249 Md. 104, 238 A. 2d 533 (1968); *Gray v. Gray,* 245 Md. 713, 228 A. 2d 441 (1967); *Murray v. Fishman Constr. Co.,* 241 Md. 538, 217 A. 2d 357 (1966); *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960).

Judge Horney, in the opinion which he filed for this Court in *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d

239 (1968) summarized the burden which the moving party must meet:

> "As was pointed out in *Tasea Investment Corp. v. Dale*, 222 Md. 474, 160 A. 2d 920 (1960) and in *Murray v. Fishman Construction Co.*, 241 Md. 538, 217 A. 2d 357 (1966), the trial court, besides requiring the party, who moves to set aside an enrolled judgment, to prove that he is acting in good faith and with diligence and that he has a meritorious defense, should also require a showing of such facts and circumstances as will establish the fraud, mistake or irregularity allegedly used to obtain the judgment sought to be vacated.
>
> "* * * A mere *error,* which in legal parlance generally connotes a departure from truth or accuracy, *State ex rel. Smith v. Smith,* 252 P. 2d 550, 555 (Ore. 1953) and *Gronseth v. Mohn,* 234 N. W. 603, 604 (S. D. 1931), is certainly not an *irregularity* (under Rule 625), which is usually defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done. *State v. Lazarus,* 65 S. E. 270, 272 (S. C. 1909) ; *State ex rel. Caplow v. Kirkwood,* 117 S. W. 2d 652 (Mo. 1938) ; *Babb v. City of Wichita,* 241 P. 2d 755 (Kan. 1952) ; *Black's Law Dictionary* (4th Ed.).
>
> "We also point out that the entry of the default judgment, pursuant to Rule 310 b, by the plaintiff without giving notice to the defendant did not constitute an 'irregularity' within the meaning of Rule 625. *Pumphrey v. Grapes,* 215 Md. 573, 138 A. 2d 916 (1958). Nor was the attorney for the plaintiff obliged to advise the attorney for the defendant of his intention to enter judgment by default. See Rule 306 b." 249 Md. at 478-79.

The circumstances on which Grantham relies do not mount up to mistake or to surprise which can be equated with irregularity. As the lower court observed:

> "Yes, but, Mr. Kaplan, you are just ignoring the

fact that there was an entry of judgment that was intended to be entered. I knew it was being entered when I signed it. Your office was represented in my chambers with Mr. Euwer. You got a copy of the judgments the same day, the next day, or whenever it was. You had it for a month or six weeks or two months. That is no mistake. That is official entry of a judgment."

There is scant support to Grantham's contention that he was taken by surprise. Mr. Kaplan, who assumed responsibility for concluding the matter after the settlement figure had been agreed upon, knew that Mr. Euwer's client was insisting on the entry of judgment. No one denies that Mr. Feissner's office received a copy of the judgments within several days after they had been entered. In any event, Mr. Feissner was obliged to keep himself informed of the docket entries. *Pumphrey v. Grapes,* 215 Md. 573, 138 A. 2d 916 (1958) ; *Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 118 A. 2d 665 (1955) ; *West v. William E. Wood Co.,* 140 Md. 514, 523, 118 A. 69 (1922). While the lack of testimony as to the manner in which the "line" was amended is certainly not to be commended, and the change, if made without Mr. Feissner's knowledge, should not be condoned, under the circumstances of this case the amendment of the "line" was of no practical consequence. Satisfaction could have been the subject of extrinsic proof, *Downey v. Forrester,* 35 Md. 117, 120 (1872), and it is the payment and not the entry of it which constitutes satisfaction, 2 Poe, *Pleading and Practice* § 400 at 374 (5th ed. 1925) ; *Trieschman v. Eaton,* 224 Md. 111, 118, 119, 166 A. 2d 892 (1961). Payment was, in fact, the subject of the stipulation filed in the case by the parties on 28 August, which recited that Grantham received $31,802.98 from Skipton.

What we said in *Pumphrey v. Grapes, supra,* 215 Md. 575-76 is equally applicable here. "There is no charge of fraud, and we think the appellants have not made out such a case of mistake or irregularity as to entitled them to relief." In *Bond v. Citizens National Bank,* 65 Md. 498, 4 A. 893 (1886), where a motion to strike a judgment was grounded on surprise, mis-

take and lack of knowledge, Judge Alvey, speaking for the Court, said:

> "* * * This, as a ground for striking out the judgment is wholly untenable. The defendants' attorney could have easily learned of the entry of the judgment by examination of the record or by inquiry of the clerk. It does not appear that he did either; * * *" 65 Md. at 501.

*See also, Iskovitz v. Sakran,* 226 Md. 453, 174 A. 2d 172 (1961); *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960); *Williams v. Snyder,* 221 Md. 262, 155 A. 2d 904 (1959).

Under our view of the case, we do not reach the Board's contention that Grantham cannot challenge a judgment in his favor after he has accepted the benefits, *Dubin v. Mobile Land Co.,* 250 Md. 349, 243 A. 2d 585 (1968) or appeal from a denial of his motion to vacate such a judgment. 2 Poe, *op. cit.,* § 391 at 369. *See also, Wheaton Lumber Co. v. Metz,* 229 Md. 78, 86, 181 A. 2d 666 (1961), where the query was posed but not decided.

We conclude that the motion to vacate was properly denied.

### The Granting of the Motion for Summary Judgment

Our law is well settled that the satisfaction of a judgment entered against one or more joint tortfeasors releases all of them.

> "The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a tort, breach of contract, or other breach of duty, discharges each of the others from liability therefor." Restatement, *Judgments* § 95 at 469 (1942).
>
> "The discharge or satisfaction of a judgment against one of several persons each of whom is liable for a single harm discharges each of the others from liability therefor." 4 Restatement, *Torts* § 886 at 464 (1939).
>
> "* * * When payment of the judgment in full is made

by the judgment debtor, there is no doubt that the plaintiff is barred from a further action against another who is liable for the same damages, or from enforcement of another judgment against him." Prosser, *Torts* § 45 at 268 (3d ed. 1964).

Judge (now Chief Judge) Hammond, speaking for this Court in *Trieschman v. Eaton,* 224 Md. 111, 166 A. 2d 892 (1961) restated the rule of the Maryland cases:

> "The rule that there could be but one satisfaction of the same wrong originated at common law in the case of joint tortfeasors because there was but one cause of action—that against both. In the beginning independent wrongdoers liable for the same loss were not absolved by the release of one. Gradually the rule of releases governing joint wrongdoers was extended to independent tortfeasors and it has become the law of most of the States. It was declared to be the law of this State in *Cox v. Maryand Elec. Rwys. Co., supra* [126 Md. 300, 95 A. 43 (1915)]. The Court held that where one concurrent tortfeasor, who had been sued, paid an agreed amount in full to the injured person who caused to be made a docket entry in the case of 'agreed and settled and all claims therein satisfied,' there had been full satisfaction which discharged the other tortfeasor and barred a subsequent suit against him. The Court said that unlike the rule in some States, in Maryland 'it is not essential that the party with whom the settlement is made or by whom the release is given shall be a joint *tortfeasor* in order to release others from liability.' " (Emphasis in original) 224 Md. at 117.

We think that *Cox* is determinative of the question before us. It should be emphasized that we are here dealing with a judgment which has been satisfied: not, as was the case in *Trieschman, supra,* with a partially satisfied or unsatisfied judgment, Prosser, *op. cit.,* § 45 at 267; nor with the effect of a release given under the Act, Prosser, *op. cit.,* § 46 at 270-71 (*Compare,* however, *Maryland Lumber Co. v. White,* 205 Md.

180, 107 A. 2d 73 (1954), which held that the entry of an order of satisfaction prior to judgment was the equivalent of a release under the Act, § 23), but with the entry of a judgment which the parties agree has been satisfied in full. 2 Poe, *op. cit.*, § 400 at 374; *Neidig v. Whiteford,* 29 Md. 178 (1868); *Downey v. Forrester, supra.*

The Act, § 16, defines joint tortfeasors as meaning "* * * two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Grantham sued Skipton and the Board as joint tortfeasors; obtained a joint verdict against them in the first trial; released Skipton as a joint tortfeasor, and cannot now be permitted to attack the granting of the summary judgment on the theory that there was no proof that Skipton and the Board were joint tortfeasors. Had they been concurrent or plural tort-feasors, there would have been no difference in the result. *Berkley v. Wilson,* 87 Md. 219, 39 A. 502 (1898).

The Act, § 18, provides: "The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor." We have held that an unsatisfied or partially satisfied judgment against one tortfeasor will not discharge another. *Trieschman v. Eaton, supra.*

But the rule of the Maryland cases is clear:

> "* * * Although * * * the injured party may bring separate suits against the wrong-doers, and proceed to judgment in each, and * * * no bar arises as to any of them until satisfaction is received, yet the party injured may have but one satisfaction. So, if as a matter of fact the wronged party has actually received satisfaction, or what in law is regarded as its equivalent, from one tort-feasor, he is barred from proceeding against the other tort-feasors." *Lanasa v. Beggs,* 159 Md. 311, 319, 151 A. 21 (1930).

Grantham would have us read § 18 as though it said "The recovery *on* a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor." Support can be found for this contention in *Hackett v. Hyson, 72*

R. I. 132, 48 A. 2d 353 (1946), 166 A.L.R. 1096, but in our view the more persuasive authority is to the contrary. *Raleigh v. Peterson*, 165 F. Supp. 47 (D. Pa. 1959); *Hilbert v. Roth*, 395 Pa. 270, 149 A. 2d 648 (Sup. Ct. 1959).[1] *See also, Theobald v. Kenney's Suburban House, Inc.*, 48 N. J. 203, 225 A. 2d 10, 12, 13 (1966).

We conclude that § 18 of the Act did not alter the well-established common law rule: further action is barred when a judgment against one tortfeasor is satisfied. The order granting the Board's motion for summary judgment should not be disturbed.

*Orders affirmed; costs to be paid by appellants.*

---

1. In 1955 the Commissioners on Uniform State Laws revised the Uniform Contribution Among Tortfeasors Act, which had originally been adopted in 1939 and was enacted in Maryland in 1941. § 3(e) of the revised act, which would take the place of § 18 of the Maryland Act, provides:

"The recovery of a judgment for an injury or wrongful death against one tortfeasor does not of itself discharge the other tortfeasors from liability for the injury or wrongful death unless the judgment is satisfied. The satisfaction of the judgment does not impair any right of contribution."

The Commissioners' explanatory note says:

"Subsection (e) Judgment Against One Tortfeasor. This was Section 3 of the 1939 Act [§ 18 of the Maryland Act]. It simply states the well established rule that the injured party in obtaining judgment against one joint tortfeasor does not thereby discharge the others, although there may, of course, be but one satisfaction of the claim." 9 Uniform Laws Annotated, 1967 Cum. Pocket Part at 130, 131.