527 A.2d 1342
**David HARTLOVE, et ux.**

v.

**BEDCO MOBILITY, INC., et al.**

**No. 1557, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 14, 1987.

Charles Mentzer, Baltimore, for appellants.

Jeanne B. Gardner (James F. Gray and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee, Bedco Mobility, Inc.

Mark T. Mixter (Mykel Hitselberger and Smith, Somerville & Case, on the brief), Baltimore, for appellee, The Cheney Co., Inc.

Argued before WILNER, ROSALYN B. BELL and WENNER, JJ.

WILNER, Judge.

David Hartlove, a disabled person, had a chair-type stairway elevator installed in his home. The elevator was manufactured by The Cheney Company, Inc.; it was installed and was to be serviced and maintained by appellee Bedco Mobility, Inc.[1] On November 30, 1981, the elevator allegedly malfunctioned, causing Mr. Hartlove to fall down the steps and sustain injury.

---

1. The installation and maintenance agreement was apparently with Bedco's predecessor, Baltimore Elevator & Dumbwaiter Co., Inc. For convenience, we shall refer to Bedco as including its predecessor.

As a result of that occurrence, Mr. Hartlove and his wife Katherine filed two proceedings. In the Circuit Court for Baltimore City, they sued Cheney and Bedco on a variety of theories relating to the design, manufacture, and installation of the device. In the Health Claims Arbitration Office, they filed a claim against Kimberly Nurses, Inc. As none of the papers in that proceeding are in the record before us, we cannot ascertain directly the nature of the claim made against Kimberly, but the Hartloves have acknowledged that it was based on the same occurrence and injury as the action against Cheney and Bedco. Apparently, a nurse supplied by Kimberly was employed to care for Mr. Hartlove and was negligent in leaving him in the elevator.

The Hartloves filed their action in Circuit Court in July, 1982.[2] Although Cheney filed a timely response, Bedco did not. On June 27, 1983, the Hartloves moved for and obtained judgment by default against Bedco by reason of its failure to file a proper plea. In accordance with former Md. Rule 611, notice of the judgment was sent to Bedco, informing it that it had 30 days to "take exception to this Judgment by Default."[3]

Within the 30 days, Bedco moved to vacate the judgment, asserting that it had never been served with process and that it had a meritorious defense to the action. The assertion as to non-service was supported by an affidavit of Bedco's president that neither he nor any other officer had been served and by an affidavit of a legal assistant in defense counsel's office that he had examined the court file and found that it contained no return of service for Bedco.

---

2. In their Record Extract, appellants include a copy of an unsigned Amended Declaration containing a certificate of service bearing a date of "this _____ day of November, 1983." No such pleading is in the record certified by the clerk and no such pleading is docketed in the case. The record before us indicates that the case was disposed of on the original July, 1982 declaration.

3. As the motion was filed before the effective date of the current Maryland Rules governing practice and procedure in the circuit courts, it was governed by former Md. Rules 310 and 611.

As to its defense, Bedco contended "that it installed the stair-climber elevator properly and was never called to maintain or repair this product."

On August 25, 1983, the court granted Bedco's motion and vacated the default judgment. At the same time, it also granted a motion of Cheney to file a plea Puis Darrein Continuance, informing the court of the claim then pending before the Health Claims Arbitration Office "in which the plaintiff in this litigation is seeking full compensation for the injuries and damages he claims to have incurred as a result of the occurrence complained of in this litigation."

At some point, the Health Claims Arbitration Panel entered an award in favor of the Hartloves in the amount of $15,000. Mutually dissatisfied (though obviously for different reasons), both sides rejected the award, whereupon the Hartloves filed a proceeding in the Circuit Court for Baltimore County to upset it. During the pendency of that proceeding, however, the Hartloves settled with Kimberly; they received $30,000 and dismissed the action.

On learning of those events, Cheney and Bedco moved for summary judgment, arguing that the Hartloves had already received "complete satisfaction" of all damages through the action against Kimberly. The court granted those motions and entered judgments in favor of the defendants; this appeal ensued, in which the Hartloves challenge the entry of summary judgment against them.[4]

The motions for summary judgment were based upon the notion that an injured party can receive only one satisfaction for the same wrong. *See, e.g., Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003 (1987); *Grantham v. Prince George's County,* 251 Md. 28, 246 A.2d 548 (1968); *Triesch-*

---

**4.** During the proceeding below, Mr. Hartlove died. Mrs. Hartlove, as personal representative, was substituted as a plaintiff. At oral argument, appellants abandoned the first argument raised in their brief, challenging the court's striking of the default judgment. We are concerned, therefore, only with the granting of the motions for summary judgment.

*man v. Eaton,* 224 Md. 111, 166 A.2d 892 (1961); *Berkley v. Wilson,* 87 Md. 219, 39 A. 502 (1898). This *is* a valid doctrine, but we think it was misapplied in this case.

■ The cases in which that principle has been applied have, to the best of our knowledge, involved situations in which the plaintiff has (1) recovered a judgment against one of several tortfeasors who, allegedly, caused or contributed to a single, particular harm, and (2) has received satisfaction of that judgment. In that setting, the Court of Appeals has precluded the plaintiff from subsequently pursuing the other tortfeasors because he has already been made whole for his injury. *See Grantham v. Prince George's County, supra,* 251 Md. 28, 246 A.2d 548; *Bell v. Allstate Insur. Co.,* 265 Md. 727, 291 A.2d 478 (1972). The necessary underpinning to this notion, of course, is the fact that, with the judgment, there has been a formal and legally creditable adjudication of the full amount of damage sustained by the plaintiff, even if the judgment has been entered by consent (*Bell, supra*) or the satisfaction is based on less than full payment of the judgment.

Where the plaintiff settles with one of several joint or concurrent tortfeasors *prior* to judgment, however, that necessary underpinning is lacking, and so a different rule applies. At common law, the result would have been the same, as "a release by the injured party of one of several joint tortfeasors released all." *Swigert v. Welk,* 213 Md. 613, 619, 133 A.2d 428 (1957). The Legislature abrogated that doctrine, however, with the enactment of the Uniform Contribution Among Joint Tort-feasors Act (Md. Code Ann. art. 50, §§ 16–24). Section 19 of art. 50 provides:

"A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

■ It is clear from this provision that a plaintiff is not necessarily made whole simply because he settles with one of several joint or concurrent tortfeasors—that he is entitled to pursue them segmentally and (until there *is* a judgment rendered) to collect as much as he can from each. We commented on the distinction in *Loh v. Safeway Stores, Inc.*, 47 Md.App. 110, 422 A.2d 16 (1980), as the Court of Appeals had done in *Grantham* and in *Maryland Lumber Co. v. White*, 205 Md. 180, 107 A.2d 73 (1954).

The instant case lies somewhere between these two lines of authority. There *has been* an adjudication of appellant's damage, but it was by an arbitration panel, not by a court. What credence should be given to that adjudication?

We look for guidance to *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dism.* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), where, in analyzing the legislative scheme for arbitrating health care malpractice disputes, the Court observed:

"The decision of the panel is not—or need not be—in any sense a final determination of the controversy. Either party may reject the panel's determination, for any reason or no reason, and proceed, as he could have before the statute was enacted, to have the matter determined in an appropriate Article IV court of law. Even if the parties accept the decision of the arbitrators, the panel which made it cannot enforce it."

*Id.*, 287, 385 A.2d 57.

■ That, of course, is what occurred here. Both parties rejected the award, thereby effectively nullifying it. To recover anything against Kimberly, the Hartloves were virtually back to square one. They were put to filing an action in court and proving against Kimberly not only liability but the extent of their damage, and, while under the statute the arbitration award would have been admissible as evidence and enjoyed a presumption of correctness, the jury would have been fully entitled, in their overall weighing of the evidence, to give it no more actual credence

than the parties gave it. In reality, the settlement effected by the parties during the pendency of the Kimberly case was no different than the more traditional pre-judgment settlement. It is not the equivalent of satisfaction of a judgment but merely in the nature of a pre-judgment release. Its effect insofar as appellees are concerned is governed by the Uniform Act, not by the *Grantham* principle.

The full text and details of the settlement made between appellant and Kimberly are not in the record before us, and we therefore cannot at this point tell what the full effect of it is on the case against appellees. We conclude only that it does not, of itself and without regard to its terms, have the automatic effect of precluding further proceedings against appellees, and the court therefore erred in dismissing the actions on that basis.

JUDGMENTS REVERSED; CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY; APPELLEES TO PAY THE COSTS.