HALE, ET VIR *v.* CRAMER, ET AL.

[No. 363, September Term, 1968.]

*Decided July 8, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Douglas N. Sharretts* and *Louis Peregoff*, with whom was *Edward J. Birrane, Jr.* on the brief, for appellants.

*L. Robert Evans*, with whom were *Samuel A. Green, Jr., Robert H. Archer*, and *Henry C. Engel* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This case is an extension of *Palmisano v. Baltimore County*, 249 Md. 94, 238 A. 2d 251 (1968), *cert. den.* 393 U. S. 853, 89 S. Ct. 93, 21 L.Ed.2d 123 (1968), in which case Judge Finan for this Court in the opening paragraph of the opinion said:

> "When an adoption proceeding lengthens into prolonged litigation, when such litigation finds its way to the appellate level, one may be sure that behind every legal move and counter move lies an abundance of bitterness and, perhaps, heartbreak. If, to this unfortunate circumstance, one adds a child born out of wedlock to teenage parents who successfully conceal the birth from their own families, who in desperation surrender the child for adoption to a public agency, only to subsequently have a change of heart after the adoptive parents have taken the infant into their home and formed a tender affection for it, the tragedy of the case becomes all too

apparent. It is no wonder that, under these conditions, the child may properly be characterized as a 'physical football' of the welfare board. It must follow that the primary concern of this Court is the welfare of the child, rather than the feelings of the adults or near adults who are the *dramatis personae.*" *Id.* at 95-96.

The infant child was born May 28, 1964. With the exception of the period between January 15 and May 8, 1965, the child appears to have been in the home of the appellees, Howard Harry Cramer and wife, for most of the period following her birth. She has been there continuously since May 8, 1965.

The Circuit Court for Harford County on the petition of Mr. and Mrs. Cramer passed a decree on November 15, 1965, declaring the child to be their legally adopted child. On October 20, 1964, the Baltimore County Welfare Board was appointed guardian with the right to consent to adoption pursuant to the provisions of Code (1957) Art. 16, § 72 and Maryland Rules D 71 and D 78. As such guardian it consented to the adoption by Mr. and Mrs. Cramer.

In *Palmisano v. Baltimore County, supra,* the natural parents and the maternal grandparents sought to set aside the decree appointing the Baltimore County Welfare Board as guardian with the right to consent to adoption. This Court said:

"After a most thorough review of the record, we are of the opinion that the court below did not err in refusing to reopen the October 20, 1964 guardianship decree." *Id.* at 98.

The natural mother and her parents filed a motion on January 3, 1966 (more than 30 days after the entry of the adoption decree), seeking leave to intervene in the adoption proceeding. Leave was granted with the comment made by the chancellor:

"Although this Court has some reservations

as to the propriety of receiving a Petition to Intervene in a case such as this one, where nothing is pending and where a final Decree has been entered and enrolled, the Court has, nevertheless, decided to allow the Petitioners to intervene in this case in furtherance of its broad discretion to see that equity and justice are done."

Ultimately, a motion to dismiss was granted against the maternal grandparents "on the basis of their insufficient standing to strike the decree of adoption". Subsequent to their intervention a motion to strike the decree of adoption was filed by the natural parents of the infant child, the appellants here. Leave was granted the Harford County Welfare Board to intervene in the proceeding and it here appears as an appellee. From an order of the Circuit Court for Harford County denying the motion to strike the adoption decree the natural parents here appeal. We shall affirm the action of the chancellor.

Under Maryland Rule 625 a an enrolled judgment or decree may not be set aside except "in case of fraud, mistake or irregularity". See *Household Finance Corporation v. Taylor*, 254 Md. 349, 254 A. 2d 687 (1969) ; *Himes v. Day*, 254 Md. 197, 254 A. 2d 181 (1969) ; *Grantham v. Prince George's County*, 251 Md. 28, 246 A. 2d 548 (1968) ; *Berwyn Fuel and Feed Co. v. Kolb*, 249 Md. 475, 240 A. 2d 239 (1968). The natural parents urge a number of reasons why the chancelor erred in failing to grant their motion to strike the adoption decree. They are bound, however, by our prior holding in *Palmisano v. Baltimore County, supra,* in which they were parties, that the decree appointing the Baltimore County Welfare Board guardian with the right to consent to an adoption was valid and binding. Code (1957) Art. 16, § 72 as amended by Chapter 36 of the Acts of 1962 provides in pertinent part:

"A petition for adoption * * * may be preceded by a petition for guardianship with the right to consent to adoption, and such guardian-

ship decree * * * shall terminate natural parental rights, and the duly appointed guardian's consent to an adoption * * * shall eliminate the necessity of further notice to the natural parent or parents."

This case is in no way comparable with *McClary v. Follett, Jr.,* 226 Md. 436, 174 A. 2d 66 (1961) in which in an opinion by Judge (later Chief Judge) Prescott this Court did permit a father to move to set aside an adoption notwithstanding the provisions of Code (1957) Art. 16, § 79 which states:

"No attempt to invalidate a final decree of adoption by reason of any jurisdictional or procedural defect shall be received by the court, or by any court of this State, unless regularly filed with such court within one year following the entry of the final decree."

In that case the father had made repeated and unsuccessful efforts to locate the mother and child. The mother falsely swore in her consent to adoption that she was unwed, that the child was born out of wedlock, that Follett was an assumed name of her "boy friend", who was the father of the child, and that she did not know the location of the residence of the natural father. The chancellor there found that the father did not receive the notice required under Code (1957) Art. 16, § 75, now supplanted by Maryland Rule D 74.

In *Palmisano v. Baltimore County, supra,* this Court said:

"Upon the issuance of the final decree on October 20, 1964, the parents of the child were no longer interested parties, and therefore lacked the standing to challenge the Welfare Board's procedure subsequent to the final decree.

"This Court is well aware that its decision has permanently separated a child from her natural parents, who are now in a position to accept her

as their own. \* \* \* However, to do otherwise, this Court would be dissolving the foundation underlying all adoptions, the need to surround the final decree with a high degree of certainty. Society looks upon adoption as a salutary and uplifting humane act. The general welfare of the State is enriched by its use. It provides countless foundlings with an opportunity for a normal childhood which otherwise they might not have. Anything which would undermine public confidence in adoption procedures must be viewed by the courts in the gravest light." *Id.* at 103.

The reason and the wisdom of the rules and the statutes on the subject may be perceived when one notes that a ruling favorable to the natural parents would cause removal of this child, now five years of age, from the home in which she has been continuously more than four years. In other words, such a decision would remove the child from the only home she recalls. The natural mother, then unwed, consented to the guardianship with the right to consent to adoption. The attack on that proceeding has been fully, completely, and unsuccessfully litigated by the natural parents. Heart-rending as it may be to them, under the laws of this State the natural parents are now without standing to challenge this enrolled adoption decree. Accordingly, the chancellor was correct in refusing to set aside the adoption decree.

*Order affirmed; appellants to pay the costs.*