11 Md. App. 615 (1971)
276 A.2d 675
FAROOQ HUSAIN QURESHI, ET UX.
v.
DIRECTOR, PRINCE GEORGE'S COUNTY DEPARTMENT OF SOCIAL SERVICES.
No. 502, September Term, 1970.
Court of Special Appeals of Maryland.
Decided April 6, 1971.
*617 The cause was argued before MORTON, ORTH, and THOMPSON, JJ.
Samuel F. Ianni for appellants.
Albert J. Lochte, County Attorney for Prince George's County, with whom were Lionel M. Lockhart and Harry L. Durity on the brief, for appellee.
ORTH, J., delivered the opinion of the Court.
At the first it seemed that Farooq Husain Qureshi and Patricia Ann Kimble were destined to be star crossed.[1] He impregnated her and she bore a male child out of wedlock, delivered 4 June 1968 at the Columbia Hospital for Women in the District of Columbia. She was nineteen years of age at the time. He has never denied that he was the father; he paid her rent before the baby was born, all the hospital bills and some costs of the Department of Social Services for Prince George's County. After the birth of the baby, according to her, "we were trying to break our relationship but we couldn't. * * * Well, we wanted to be married. We had been trying to get married for some time but we couldn't come to an agreement on religion with marriage, and we felt it best not to be married until we came to an agreement." In September 1968 Qureshi was asked by a social worker of the Department of Social Services for Prince George's County if he was going to marry the mother of the child. "And he stated that he would not marry the mother. He could not, would not, and that was that." Miss Kimble had not told her parents about her pregnancy or the birth of the baby and neither of them knew. "[W]ith my father's health *618 condition and my mother's nervous condition and so forth, we felt it was our problem and that we could handle it rather than let them suffer for our problems." It is readily understandable, therefore, that about a month or so before she was due she and Qureshi went to the Department of Social Services for Prince George's County to arrange to place the child for adoption. She completed some papers and was told that a social worker would come to the hospital and take the baby. "I was instructed that the baby would have to leave the hospital before I did." After the birth of the baby "she signed a release in the hospital allowing the agency to take the baby from the hospital." On 1 July 1968 she signed and acknowledged before a Notary Public a Petition for Guardianship with Right to Consent to Adoption in Adoption No. 4806 in the Circuit Court for Prince George's County and on the same date signed and acknowledged a document entitled "Consent". As read into the record it stated:
"I hereby relinquish my parental rights in said child and I do hereby voluntarily and of my own free will consent to said adoption of said child by person or persons unknown to be selected by the Prince George's County Welfare Department, and I do hereby waive any right that I may have as to notice direct or by publication or otherwise to any proceedings relative to permission  petition for guardianship with right to consent to adoption. I further consent to the change of said child's name."
The petition was filed 12 July 1968. Under date of 14 July 1968 she wrote a letter to Mrs. Isabel Phillips, the Supervisor of the Prince George's County Welfare Adoption Services. It read:
"Dr. Qureshi and I wish to express our deepest appreciation on the part of Mrs. Grimma and all others concerned with the adoption of our son. The sincere understanding and reassurance given us by Mrs. Grimma that our *619 child will have a good home, with loving parents and the advantages we are unable to give him will surely be a comfort to us in later life. It was truly a blessing to have someone so devoted in which we could place our complete trust and confidence for the welfare of our child. We are especially grateful to Mrs. Grimma for her more than kind efforts in helping us through the most difficult period of our lives."
It was signed by her and Qureshi and bears stamp as received on 19 July. On 1 August 1968 the Circuit Court for Prince George's County entered a decree of guardianship with right to consent to adoption.
However the obstacles to the marriage were removed is not disclosed in the record before us. But Patricia Ann Kimble and Farooq Husain Qureshi were married in the home of her parents on 21 June 1969. A son has been born of the marriage and they are living together as husband and wife at the present time. He is a medical doctor and when the action here was filed was in residence at Prince George's General Hospital.
Mrs. Qureshi claimed that she had a change of heart the day she left the hospital. "My husband and I were very upset at the time they were taking the baby from the hospital. I begged them not to, that I wanted to take him home. And we called Social Services, I guess it was the next day because they were closed after I got home, and I expressed my feelings for wanting the baby back, but there was really nothing discussed about it." This conversation was with Mrs. Jana Grimma, the social worker referred to so favorably in the letter of 14 July 1968 and, of course, was prior to the time the consent and petition were executed. She also asserted that within a week after the consent and petition were executed she called Mrs. Grimma. "I told her that I didn't know what I was doing when I signed the papers; that if I only had more days to think about it, that I would have never done it, and that I wanted my baby back and I would do what I have to do to get him back. * * * She told me it *620 was too late, once I signed the papers, that I couldn't do anything." Following that conversation Mrs. Qureshi did not do anything. At that time she and Qureshi could not come to an agreement about religion and felt it best not to be married. Mrs. Grimma, on the other hand, testified that it was not until 3 October 1968 that Mrs. Qureshi called her and said she wanted her baby back and "the baby had already been placed." On cross-examination it was elicited that Mrs. Grimma did not exert any influence over the mother to sign the petition or consent. "She was as anxious as I was to make sure that the child was placed before any time had elapsed because she did not want the baby to lie in a foster home and her conception of its being uncared for. She was very eager for the child to be placed." Mrs. Grimma reiterated that October 1968 was the first time the mother had approached her with regard to withdrawing any consent. "She was upset about her feelings about having given the baby up, but she was not ready to take the baby back. She had no plan for it. She had no plan to take the baby back until October. And she said that she and the father were going to be married but at this point she had realized that we had a plan and it was only a few days after we had placed the baby that she had come up with any kind of a plan and it did not materialize until a year and a half later." But it appeared that the mother was permitted to see the child after she had signed the consent.
The record before us does not reveal whether or not the child has been finally adopted. There is in evidence a copy of a letter dated 23 April 1970 from Mrs. Isabell Phillips, Adoption Supervisor of the Prince George's County Department of Social Services to Mrs. Patricia Qureshi in response to a request of Mrs. Qureshi that the Director of the Department call her. "In reply to your telegram of 17 April, this is to let you know that all of the papers in regard to the adoption of Baby Boy Kimble went to Court in March and are in the final stages of being legally processed in order to finalize the adoption."
On 11 May 1970 Mr. and Mrs. Qureshi (appellants) *621 filed an action against Virgil H. Hampton, Director, Prince George's County Department of Social Services (appellee), by way of a document entitled "Petition for Rule to Show Cause," seeking an order that appellee show cause why he should not inform appellants "as to the jurisdiction and place of any adoption proceedings" for the child and why he should not inform them "as to whether or not any adoption proceedings for the `baby boy Kimble' have been commenced and if the same have been commenced, has a Final Decree of Adoption been granted." The court issued a rule to show cause and ordered it to stand for a hearing. Upon an evidentiary hearing it dismissed the rule to show cause. Appellants claim the court erred in refusing to grant their request.
First we find that no rights of Dr. Qureshi were violated by the court's action because he had no standing in the proceedings. His consent was not required in any event for a valid adoption of the child. It is only when a child born out of wedlock has been legitimated according to the laws of any jurisdiction that the consent of the father to any proposed adoption is ordinarily required and then only "if he is alive and has not subsequently lost his parental rights through court action or voluntary relinquishment or abandonment." Code, Art. 16, § 74 (d). Here it is unrefuted that the child had not been legitimated. The father testified that he had done nothing except to file the action before us. If his consent was not required for an adoption, it was patently not required for the decree of guardianship with right to consent to adoption. It was of no moment that he admitted being the father. Neither an admission by a man that he is the father nor such a finding in a paternity proceeding that a man is the father even though he is ordered to pay for the child's support and maintenance, see Code, Art. 16, §§ 66A-66P, gives him rights by reason thereof in an adoption proceeding.
We also find that the mother had no rights to be violated by the court's action. The court was not clearly erroneous in its judgment on the evidence that her consent *622 to the petition for guardianship with right to consent to adoption was knowingly and intelligently given. Therefore her natural parental rights were terminated. Code, Art. 16, § 72 (a) specifically provides that a decree of guardianship with the right to consent to adoption "shall terminate natural parental rights[2] and the duly appointed guardian's consent to an adoption * * * shall eliminate the necessity of further notice to the natural parent or parents." Maryland Rule D 78a provides that the court may enter a final decree of guardianship with the right to consent to adoption without having first entered an interlocutory decree. There is nothing in the record before us to suggest that the decree of guardianship with the right to consent to adoption entered on 1 August 1968 was other than a final decree. Upon the issuance of the final decree of guardianship on 1 August 1968 the mother was no longer an interested party and therefore lacked the standing to challenge the Department of Social Services procedures subsequent thereto and was not entitled to the information sought. Palmisano v. Baltimore County, 249 Md. 94, 103; Hale v. Cramer, 254 Md. 592. Further, by the terms of Code, Art. 16, § 74, although any consent obtained under its provisions may be revoked and cancelled at any time before final decree, such consent expressly may not be revoked and cancelled after a guardianship decree under § 72.[3]
Appellants did not seek to set aside the guardianship *623 decree in the action before us[4] and by our holdings it is deemed valid and binding. Mr. Qureshi never had standing to challenge the Department of Social Services procedures and Mrs. Qureshi lost her standing to do so subsequent to the final guardianship decree. Neither was entitled to the information sought. We hold that the lower court did not err in refusing to permit them to obtain it and in dismissing the rule to show cause.
We adopt the language of Finan, J., speaking for the Court of Appeals in Palmisano v. Baltimore County, supra, at 103, adapting it to the case before us:
"This Court is well aware that its decision has separated a child from [his] natural parents, who are now in a position to accept [him] as their own. It realizes that as time goes by, these young parents may be haunted by the realization that, * * *, their [son] is growing up in another home with people [he] will look upon as [his] father and mother. However, to do otherwise, this Court would be dissolving the foundation underlying all adoptions, the need to surround the final decree with a high degree of certainty. Society looks upon adoption as a salutary and uplifting humane act. The general welfare of the State is enriched by its use. It provides countless foundlings with an opportunity for a normal childhood which otherwise they might not have. Anything which would undermine public confidence in adoption procedures must be viewed by the courts in the gravest light."
Order affirmed; costs to be paid by the appellants.
NOTES
[1] "A pair of star cross'd lovers." Shakespeare: Prologue to Romeo and Juliet.
[2] Acts 1970, ch. 144, approved 15 April 1970 and effective from date of passage added "duties and obligations."
[3] We note that § 74 also provides:

"Minority of a natural parent shall not place such parent under a disability in adoption or guardianship with the right to consent to adoption proceedings and such parent, if he has attained the age of eighteen (18) years, may give a valid consent to adoption or guardianship with the right to consent to adoption and/or join as a party in such proceedings and shall be considered sui juris and no adoption or guardianship with right to consent to adoption shall be invalidated because of the minority of a natural parent."
Acts 1970, ch. 221, effective 1 July 1970, rewrote the paragraph above quoted. The substance of the provisions was not changed.
[4] See Maryland Rule 625 (a), Revisory Power of Court Over Judgment; Rule 671 a, Final Decree  Enrolled after 30 days; Rule D 78b, Decree of Guardianship with Right to Consent to Adoption  Duration; Rule 1 a 6, Scope of Rules. We are not here faced with the task of reconciling the power of the court to terminate the guardianship at any time by revoking the decree as bestowed on it by Rule 78b with the provisions of Rule 625a that the court shall have revisory power over a judgment after the expiration of 30 days after its entry or thereafter pursuant to a motion filed within such period only in case of fraud, mistake or irregularity. The Court in Palmisano v. Baltimore County, supra, was not required to give an interpretation of Rule D 78 either, but see its comments at 102-103.