(Decided May 1st, 1866.)

---

SAMUEL A. DAVIDSON *vs.* CHARLES H. MYERS AND ALEXIUS J. MYERS.

LIEN OF JUDGMENT : INTERLOCUTORY AND FINAL JUDGMENT.—A judgment by default was entered on the 15th of January, 1862, and final judgment for the amount of the claim with interest was entered up on the 30th of October, 1862, HELD :

1st. That this judgment could not in the nature of things relate back and take effect as of the date of the judgment by default; nor could the judgment by default, in establishing the jurisdiction of the Court and the simple fact of the plaintiffs right to recover, be said or understood to constitute a recovery.

2nd. That treating the judgment by default as interlocutory merely, it could not operate as a lien on the real or leasehold property of the defendant.

The Act of 1861, Ch. 70, declares that judgments shall be liens *for their amount* and *from their date,* HELD :

That by this provision final judgments alone were contemplated.

Davidson *vs.* Myers et al.

APPEAL from the Superior Court of Baltimore City.

On the 14th of December, 1863, the appellant filed his bill of complaint in the Superior Court of Baltimore City, stating as follows :

"That at January Term, 1862, of the Court of Common Pleas for Baltimore City, your orator obtained a judgment by default against a certain William Rogers, which was afterwards extended by the agreement of the parties on the 30th day of October, 1862, for the sum of $277.50 cts., with interest from the 24th day of October, 1862, and costs, that on the 18th day of August, 1863, your orator caused a writ of *fieri facias* to be issued on said judgment, which was duly executed by levying the same on certain leasehold estate belonging to said Rogers, lying on Hoffman street, in the City of Baltimore, and by a sale thereof, at public sale to your orator, all of which will more fully appear by a short copy of the docket entries in said Court of Common Pleas, herewith filed, marked A, and by a copy of the Sheriff's deed herewith filed, marked B, and prayed to be taken as part hereof.

" That all said proceedings were regular and *bona fide* on the part of your orator, and as he charges, vested a perfect legal title in him, and he especially avers that the judgment as finally extended as aforesaid, was for the real debt due by said Rogers to your orator, and for which he held the note of said Rogers. Your orator further showeth, that on the 9th day of September, 1862, a certain Charles H. Myers and Alexius J. Myers, who are prayed to be made defendants hereto, obtained a judgment against said Rogers in your honorable Court by confession, as appears by the short copy thereof herewith filed, marked C, and prayed to be taken as part of this bill of complaint ; that the said plaintiffs last named since the execution of the

Sheriff's deed to your orator, to wit : on the 29th day of October, 1863, caused a writ of *fi. fa.* to issue on said last judgment, and placed it in the Sheriff's hands for the avowed purpose of levying the same on and selling the identical property described in said Sheriff's deed, under the pretence that said judgment so obtained in your honorable Court, is prior in legal effect to the aforesaid judgment of your orator ; whereas your orator charges that the same is subsequent, and that the only effect of such levy and sale will be to harrass and injure your orator, by casting clouds of doubts upon the title thus legally acquired by him, and by causing him to institute proceedings against the purchaser, whoever he may be, under the said *fi. fa.* now in said Sheriff's hands as aforesaid, with a view to the cancelation of his said purchase, and the removal of the cloud about to be cast over the title of your orator by the illegal acts and continuances of said Charles H. Myers and Alexius S. Myers in the premises, all of which proceedings your orator charges are oppressive and contrary to good conscience, wherefore inasmuch as your orator is remediless, at and by the strict rules of the common law, and to the end that the said Charles H. and Alexius J. Myers, and the Sheriff of Baltimore City, may be enjoined from proceeding further in the execution of said writ of *fieri facias* so issued from your honorable Court, and that your orator may be decreed to have a perfect and valid title to said property as against the pretended lien of the judgment so obtained by said Charles H. and Alexius J. Myers, and such other and further relief as to your honor may seem right and proper ; may it please your honor to grant the State's writ of injunction, restricting and enjoining the said Charles H. and Alexius J. Myers, their aiders and abettors, and John J. Dannecker, the Sheriff of Baltimore city, from proceeding further in the execution of said

writ of *fieri facias* issued at the suit of said C. H. & A. J. Myers, by levying the same on the property described in the deed of said Edward R. Sparks, Sheriff, as aforesaid to your orator, a copy of which is herewith filed, marked B ; and in case your honor should hold that the said defendants are entitled to priority by reason of their said execution and judgment, then your orator herewith tenders himself ready to pay into Court, and he does hereby tender himself ready under the order of your honor to pay to said defendants the full amount due to them.

The defendants answered, admitting the material facts stated in the bill, and the cause being heard on the bill and answer, the Court, MARTIN, J., on the 13th of January, 1864, delivered the following opinion :

In this case the application for an injunction is refused, and the bill dismissed, as the judgment obtained by the complainant by default, in the Court of Common Pleas, on the 15th of January, 1862, is to be treated as a mere interlocutory judgment, on the case of *Kierstead vs. Rogers & Garland*, 6 *H. & J.*, 282, and supported by approved writers on the practice of the Courts, (*Evans' Practice*, 335. *Bingham on Judgments*, 3,) and as such created no lien on the leasehold estate of the debtor, until it became a final judgment, by being extended by the Court on the 30th of October, 1862. *United States vs. Morrison*, 4 *Pet.*, 136. *Eschbach vs. Pitts*, 6 *Md. Rep.*, 71. *Clements & Barry*, 11 *How.*, 398.

The judgment therefore obtained by the complainant in the Court of Common Pleas on the 15th of January, 1862, and not extended until the 30th of October, 1862, must be considered as subordinate to the judgment regularly and fairly obtained by the defendants in the Superior Court, on the 9th of September, 1862, and I will sign a decree refusing the prayer for an injunction as asked for by the complainant, and dismissing the bill, with costs.

This appeal is taken from the order passed in conformity with the foregoing opinion.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*R. J. Brent* for the appellant.

The point at issue is whether a judgment by default in an action of *assumpsit* imports a lien on a leasehold interest from the date of its entry or from the date of its extension. The appellant obtained in the Court of Common pleas, in January, 1862, the judgment by default against Wm. Rogers. The last count of the *nar* described correctly the promissory note constituting the cause of action. By our well settled practice the Court could have extended this judgment by a simple inspection of the note when filed to see if there were any credits. *Evans' Pr.,* 335. *Kierstead vs. Rogers et al.,* 6 *H. & J.,* 285.

The rules of Court, as shown in the agreement, require an affidavit to prove the note, but it is questionable whether such rules can alter the law, which decides that the note is proved by the judgment. 6 *H. & J.,* 285. But be that as it may, if the Court of Common Pleas extended this judgment on the note when filed without the required affidavit, its error cannot be collaterally shown. *Powles vs. Dilly,* 9 *Gill,* 222. *Ranoul vs. Griffie,* 3 *Md. Rep.,* 54. *Clark vs. Diggs,* 5 *Gill,* 109.

But the rule of Court is merely to provide for an *ex parte* extension of the judgment, and the affidavit is unnecessary when defendant's counsel agrees to the execution of the note and the extension of the judgment. The Court when it extended the complainant's judgment on the 30th of October, 1862, had before it not only the agreement of the parties that it might be so extended, but the note itself as declared on and established by the default.

The fallacious idea of the appellee is that the agreement of October 30th, 1862, and the extension of the judgment thereon makes a judgment by confession, and that is the foundation of our title.   Before such final or second judgment could be entered, the judgment by default should have been stricken out, as there cannot be two judgments. *Magruder vs. Darnall,* 6 *Gill,* 279.   *Gainsford vs. Griffith,* 1 *Saund. R.,* 58, and *Roberts vs. Mariett,* 2 *Saund,* 187.

The form of a judgment by default, where the Court assess the damages, is given in 2 *Ev. Harris,* 346, 347. The true question is, to what date does our judgment, as extended, relate?   We maintain that there is but one judgment, and that is the judgment by default, which establishes conclusively the right of the plaintiff to recover what shall be found to be due to him.   *Green vs. Hamilton,* 16 *Md. Rep.,* 328, 329.   *Mailhouse vs. Inloes,* 18 *Md. Rep.,* 333.   1 *Code,* 530, 62.   2 *Wilson,* 374 and 3 *Id.,* 61 and 62.   *Gould vs. Hamersley,* 4 *Taunt.,* 748. *Jarett vs. State,* 6 *G. & J.,* 27.

If it be objected that the parties might extend the judgment collusively for too much to the prejudice of an intervening incumbrancer or judgment creditor, the answer is that a bill in equity would relieve against the fraud or other grievance complained of, as held in *Doub vs. Thomas,* 8 *Gill,* 1.   It is true that the English books of practice speak of judgments interlocutory and final, as if they were separate judgments ; but we submit that it is only to distinguish the same judgment in its incomplete phase and when perfected.   At common law the true date of the lien created by an interlocutory judgment could not be material, as lands were only affected by *elegit,* &c., and chattels by the *fi. fa.*   It is said that the lien on lands in Maryland is created by the right to levy *fi. fa. Eschbach vs. Pitts,* 6 *Md. Rep.,* 71.   And there is no lien until the plaintiff can execute.   But this

is not so, as it would prevent the lien where the judgment is stayed by agreement or by law. *Anderson et al. vs. Tydings et al.*, 8 *Md. Rep.*, 443. The same lien on leasehold estates is conferred by the Act of 1861, ch. 70.

The defendant will also contend that there can be no lien until the amount of the judgment is ascertained and entered. If this be so, what did the Court of Appeals mean by declaring judgments to be final, so as to extinguish the original cause of action, although they say they are not absolute or capable of being executed by *sci. fa.* or *fi. fa.* until the amount is ascertained. If they are final judgments, as repeatedly held, before the amount is ascertained, why is not an interlocutory judgment equally final before the amount is extended? *See Turner vs. Plowden*, 5 *G. & J.*, 52. *State vs. Jones*, 2 *Gill*, 49. *Clark vs. Diggs*, 5 *Gill*, 110. *Young vs. Reynolds*, 4 *Md. Rep.*, 388. *Ing vs. State*, 8 *Md. Rep.*, 287.

The lien takes effect from the date of the interlocutory judgment, which *pro hac vice* is final, though it is not final for an execution until it becomes absolute by the amount being ascertained of record. 15 *Texas*, 32. 11 *How.*, 409. It is true that in the last case Chief Justice TANEY dissented, but gave no opinion, and the dissenting opinion of Judge CATRON shows that he regarded the interlocutory judgment as a mere office judgment by the Tennessee practice. But our Code regards all interlocutory judgments as final by declaring that interest must be computed from their date. 1 *Code*, 15.

In conclusion, if as decided in 18 *Md. Rep.*, 323, and 16 *Md. Rep.*, 328, Dr. Davidson had his right to recover established by the default, then the defendant, Myers, could not impair that right by taking a confession of judgment subsequently from Rogers, the defendant, in the prior judgment by default, because if Rogers could thus

Davidson *vs*. Myers et al.

confess away all his property it would defeat practically the rights of Dr. Davidson as vested previously. *Martin vs. Martin,* 7 *Md. Rep.,* 368.

The fact that the judgment by default was not a final judgment when entered, but becomes so subsequently, does not prevent the lien from relating back to the date of the entry of the judgment, in the same manner that the right to interest relates back to the day of default. A judgment of condemnation *nisi* in attachment is not absolute until the lapse of the term, yet when the term passes it becomes absolute from its date and not from the end of the term. *Walters et al. vs. Munroe,* 17 *Md. Rep.,* 505. *Graff et al. vs. Merchants and Miners,* 18 *Md. Rep.,* 370.

Our bill is therefore properly filed to prevent a clear legal title, as vested under a prior judgment, from being obscured by the cloud which the defendant insists on casting over that legal title. As a bill would lie to cancel the title which the defendant might give to the purchaser under his junior judgment, so will this lie to prevent such an injustice effecting the integrity and value of our title. *Taylor vs. McCann,* 10 *Md. Rep.,* 418.

Lastly, it is clear than in an action upon such a judgment the cause of action would be considered as running from the date of the judgment by default, in the case of *limitations* being pleaded to an action of *debt* or *scire facias* on the judgment as extended.

"The Act of 1861, ch. 70, enacts, that judgments shall be liens on leasehold interest to the amount and from the date thereof to the same extent and effect as liens are now created by judgment upon real estate." Under this Act the first question is, what is the date of the judgment obtained by the appellant?

If there be but one judgment, and that is the interlo-

35 v. 24

cutory one, made final when the amount is ascertained, then its true date is the day of the judgment by default.

In the preceding pages we have shown that by the Code the judgment is to bear interest from the day of default, and this is a legislative interpretation to fix the date of the judgment when perfected.

The second question relates to the amount, but the cases cited on our brief hereinbefore, conclusively establish that the amount must be ascertained to make the judgment effectual, but it is not the less a judgment before the amount is ascertained.

In conclusion, we assume under the express decisions of this Court, that our judgment by default established our right to recover something, and whatever might be the rights of the appellees if they were judgment creditors in an adversary proceeding, yet in this case they stand on the record as mere volunteers holding a judgment by confession alone. If such a judgment can overreach our elder judgment by default, then it is in the power of every debtor while under default upon the record to nullify the right of the creditor as conclusively established by that default, for it is of no avail to say the creditor has a paramount right to something, if the debtor can, by his own voluntary confession, appropriate his whole real estate to a preferred creditor by a confession of judgment, and thus defeat the elder title.

*B. F. Horwitz,* for the appellees, argued :

1st. That the judgment by default obtained by Davidson on the 15th January, 1862, was an interlocutory judgment. Judgments by default are either interlocutory or final. When the action sounds in damages, as in *assumpsit, covenant, trover, trespass,* the judgment is only interlocutory—that the plaintiff ought to recover his damages— leaving the amount to be afterwards ascertained ; and the

judgment for the plaintiff in these actions is also interlocutory on demurrer. In *debt* the judgment is commonly final, though a writ of inquiry is sometimes required. 1 *Tidd's Practice,* 568. *Bingham on Judgments,* 3. And as to the mode of ascertaining the damages after an interlocutory judgment, see 1 *Tidd,* 570. The law in Maryland is the same. *Evans' Practice,* 335. And in *Turner vs. Plowden,* 5 *G. & J.,* 52, the Court lays down the rule that where there is nothing to be done by the Court, the judgment is final; but wherever there is an act to be done by the Court, then merely interlocutory. The elementary works above referred to, as well as the case of *Kierstead vs. Rogers,* 2 *H. & J.,* 282. *Clammer vs. State, &c.,* 9 *Gill,* 279, and the 12th rule of Court, show this judgment was but interlocutory until extended or made final by the Court.

2nd. An interlocutory judgment is not a lien on real estate. What makes a judgment a lien on real estate? It was not so at common law, because, under that system, based on the feudal system, the real estate of the defendant in a judgment could not be seized and sold under an execution issued on the judgment. The feudatory could not voluntarily alienate his land, and, *a fortiori,* the creditor could not involuntarily deprive him of it. But by statute, 13 *Edward I, ch.* 18, passed in the year 1285, and commonly called the Statute of Elegit, the right to seize and hold the real estate of the judgment debtor was given, and from that time the judgment became a lien. It is, therefore, alone the right to seize and sell the real estate under the judgment which creates the lien—a lien which is not the result of statutory provision and which is not incidental to, but flows from, the judgment. It is a matter of construction; it is the creature of the Court, and follows as a consequence of the Court's action. By statute of 5 *George*

*II, ch.* 7, relating to the Colonies of Great Britain, and which has ever since been the law of Maryland, the same right to take in execution and sell 'the real estate of the debtor as his personal estate was given. The statute of 29 *Charles I, ch.* 3, *sec.* 16, however, exempts personal property from the lien until an execution is actually placed in the Sheriff's hands, which was the law of Maryland until the passage of the Act of 1861, ch. 70, distinguishing between chattels real and chattels personal. *Coombs vs. Jordan,* 3 *Bland,* 284, 297. *Jones vs. Jones,* 1 *Bland,* 443. *Eschbach vs. Pitts,* 6 *Md. Rep.,* 71: *United States vs. Morrison,* 4 *Peters,* 124. *Miller vs. Allison,* 8 *G. & J.,* 35. 1 *Powell on Mortgages,* 273, *note o.* It then follows that there can be no lien until there is a, right to issue an execution and consequently a judgment which will support an execution under which the land can be sold. *Scriba vs. Deanes,* 1 *Brockenbrough,* 170. *Bank of U. S. vs. Winston's Exc'rs.,* 2 *Brockenbrough,* 252. An interlocutory judgment of course will not. It settles nothing but the jurisdiction of the Court, and that the plaintiff ought to recover something, but the amount is unsettled. It does not 'even merge the cause of action. *Turner vs. Plowden,* 5 *G. & J.,* 52. A final judgment determines that he do recover and what he recovers. An interlocutory judgment is but an intermediate step between the beginning and the end of the suit, like an interlocutory decree in chancery; the end is the final judgment. In fact, after the interlocutory judgment, the whole case remains to be determined, *non constat* but that the plaintiff may only recover one cent on the final judgment. There may be a regular trial, instructions asked from and given by the Court, exceptions to the Court's ruling, motions, an appeal, &c. Is it not preposterous to say that it is a lien, when even a verdict of a jury is not a lien in a case where there

is an issue and trial by jury? It might as well be contended that the filing of a declaration constituted a lien. Again, a lien must be for something, some fixed amount. The very term implies it. How can this be in the case of an interlocutory judgment where the cause of action is not even merged? *Evans' Practice*, 335–337. *Bingham on Judgments*, 13 *Law Lib.*, 1, 2. *Patrick vs. Ridgaway*, 4 *H. & J.*, 312. *Wilmer vs. Harris*, 5 *H. & J.*, 1. *Green vs. Hamilton*, 16 *Md. Rep.*, 317. *Mailhouse vs. Inloes*, 18 *Md. Rep.*, 328. *Acts of* 1864, *ch.* 175. *Murphy vs. Cord*, 12 *G. & J.*, 182.

A stay of execution does not destroy the lien. The execution is but the enforcement of the lien which springs from the judgment. The right to sell remains; it is only put off or suspended. *Anderson vs. Tydings*, 8 *Md. Rep.*, 443. The lien dates in Maryland only from the day of the rendition of the judgment. That is the final, absolute judgment. *Taylor vs. Thomson*, 5 *Peters*, 358. *Miller vs. Allison*, 8 *G. & J.*, 35. *Jones vs. Jones*, 1 *Bland*, 443. *Davidson vs. Clayland*, 1 *H. & J.*, 546. *Hanson vs. Barnes*, 3 *G. & J.*, 359. *Hampson vs. Edelin*, 2 *H. & J.*, 64. See also, 1 *Powell on Mortgages*, 275c, 279a. *Murfee's Heirs vs. Carmack*, 4 *Yerger*, 270. *Clements vs. Berry*, 11 *How.*, 398.

3d. The very language of the Act of 1861, ch. 70, (under which the lien in this case is claimed,) shows that no other than a final judgment can be a lien under it.

4th. As to the position of the appellant that the judgment of the Messrs. Myers was by confession, and therefore could not defeat Davidson's prior lien. This position assumes that Davidson had a prior lien, the very question to be determined; but besides, it was a judgment regularly and fairly entered at the second term, and such a

judgment as Rogers' attorney was obliged to enter under the 25th Rule of the Superior Court, which is in the following words, to-wit:

"25th. On the second day of the term, the trial docket will be called for the purpose of entering judgments by confession, or default, rules and other entries necessary to bring the causes to issue. The Court will expect judgment to be entered in all cases where the demand is for a sum certain and evidenced by writing under hand; or by an account verified by affidavit, unless there is a defence to the action upon which the defendant intends to rely. And where the trial of an action is stayed by injunction, or other cause for continuance exists, on which the party intends to rely, the motion is properly to be made at this time."

The cause of action was a promissory note. It was not, therefore, such a confession of judgment as was contemplated by the case of *Martin vs. Martin*, 7 *Md. Rep.*, 368, relied on by the other side. It was a judgment which Rogers' attorney was obliged to confess, and not one voluntarily confessed with a view to prejudice Davidson or any one else, which, if it were so, would have to be proved and could not be presumed. It is therefore submitted that the appellees acquired on the 9th September, 1862, an absolute judgment, and therefore a lien on the property of said Rogers, which was at that time covered by no lien in Davidson's case.

WEISEL, J., dissented, and delivered the following opinion:

I am constrained to differ from my brother Judges in their view of the character of the judgment in this case.

It is true there was a judgment by default entered for want of plea, but it was entered without leave to take out

a writ of inquiry; nor was an inquisition necessary. The plaintiff, besides the common money counts, counted upon a promissory note. The personal appearance of the defendant was entered by order of the Court, under the Act of Assembly, and he being under rule plea, judgment on *nil dicit* went against him for the damages laid in the declaration. Afterwards, and at a subsequent term, the promissory note was filed and directions given by the attorneys of both parties (the defendant then appearing by attorney) to extend the judgment for the amount of the note and interest to the 24th day of October, 1862, with interest from that time and costs. The clerk in extending the judgment, under the orders of the attorneys, made a special memorandum in these words:

" The extension of the judgment in this case is made in accordance with the foregoing order and agreement of counsel.

"*Memorandum:* Judgment was rendered in this case by default of plea, on the 15th day of January, in the year 1862, for the claim laid in the declaration and costs, and extended on the 30th day of October, 1862, for $277.50, with interest from the 24th of October, 1862, and costs."

" The judgment by default is an admission of the cause of action, and the defendant's liability to the amount of the note, which must be produced on the trial, that it may be seen whether any part of it has been paid, but which need not be proved." EARLE, J., in *Kierstead vs. Rogers,* 6 *H. & J.,* 285. And where a judgment by default is regularly entered, " it is as binding as any other, as far as it respects the power and jurisdiction of the Court, in declaring that the plaintiff is entitled to recover, though the amount of the recovery, in some cases, remains to be ascertained by the jury." *Green vs. Hamilton,* 16 *Md. Rep.,* 329. " A judgment by default is interlocutory or

final. When the action sounds in damages, as *covenant*, *trover*, *trespass*, &c., it is only interlocutory, that the plaintiff ought to recover his damages, leaving the amount of them to be afterwards ascertained. 1 *Tidd's Pr.*, 568. But where the amount of the judgment is entered by the calculation of the clerk, no further steps being necessary, by a jury or otherwise, to ascertain the amount, the judgment is final;" &c. *Clements vs. Berry*, 11 *Howard's Sup. C. U. S.*, 409, 410.

It was not necessary in this case that a jury should have been impanelled to ascertain the amount due. A judgment by default had been entered, and the extension afterwards, agreeably to the direction of counsel, was what the clerk himself could have done upon the examination of the note and any credits upon it. This was formal, and added nothing (in the language of Justice MACLEAN in the case last cited,) to the legal effect of the judgment by default. What follows in that opinion is strictly applicable to this case: "The defendant failed to plead [by the rule day] and a judgment by default consequently followed. The action being debt, founded upon notes of hand, which were admitted to be genuine by the default, the Court saw that no inquiry was necessary, and the judgment was therefore directed to be entered. That judgment was final according to the forms of entering judgments at the common law. The omission by the clerk to make the calculation of the amount of the judgment, and enter it in form on the 8th of March, was supplied by the entry on the 10th. Such entry, therefore, we think, may be considered as having relation to the first judgment." 11 *How.*, 410.

The judgment entered in this case, in my judgment, was final and not interlocutory in its character. Such judgments by the Code are to be entered to carry interest from the time they were rendered. "All judgments by con-

fession, on verdict, or by default, shall be so entered as to carry interest from the time they were rendered.'' 1 Code, Art. 29, sec. 15. This is conclusive to my mind that they are to be judgments on that day, and therefore liens on real estate from that time.

Had the note been filed in this case on or before the day the judgment by default was entered, no doubt would have arisen as to the lien of the judgment from that date. The note happened then not to be on file, and the judgment was not extended or entered for its precise amount. This was done afterwards, and although it was so extended as not to bear interest from the day of the default, but from a day subsequent, yet I do not think that this irregularity or deviation from the requirement of the Code should have the effect of postponing the lien of the judgment. A judgment having been entered for the damages in the declaration, the extension of it afterwards for the amount really due, would operate as a release of the damages upon the payment of the sum so ascertained, with the interest and costs.

There is a class of cases in Maryland in which the amount recovered in a judgment remains to be ascertained, and yet the lien attaches from the date of its entry ; as where a judgment is entered by confession for such sum as some person named or agreed upon shall say is due. Such judgment is final, and yet no execution can be sued out upon it until the sum shall have been ascertained. There is no difference between such and judgments by default, where no inquisition is necessary. The right to the execution exists in both cases, but its exercise is suspended until the judgment becomes effective. But the lien of the judgment has in both cases attached. I regard them essentially the same in this respect.

In cases of default, requiring an inquisition, it is not

clear to my mind, (nor does this case call for the examination,) whether the doctrine of relation applies.

COCHRAN, J., delivered the opinion of this Court.

The appellant rests his claim to relief on a judgment by default, obtained in January, 1862, and upon which, as appears from the record, a final judgment by confession was entered in the month of October following. The Act of 1861, ch. 70, declares that judgments shall be liens, *"for their amount and from their date,"* on leasehold interests, in the same manner as upon real estate; and the appellant's proposition is, that the judgment by default, relied on here, operated as a lien on the leasehold property of the debtor from the time of its rendition.

The character of such a judgment is well defined in our practice. "Judgments by default, on demurrer, and *non obstante veredicto,* are interlocutory ; and final judgment cannot be given until the damages to be recovered are assessed." *Bingham on Judgments,* 3. *Evans' Prac.,* 335. Generally, a defendant on whose default a judgment by default is entered, confesses the cause of action, and the judgment so entered is conclusive in respect to the jurisdiction of the Court and the right of recovery ; but it goes no farther, for the amount remains to be ascertained, and the recovery thereof to be finally adjudged to the plaintiff. *Kierstead vs. Rogers,* 6 *H. & J.,* 282. *Green vs. Hamilton,* 16 *Md. Rep.,* 317. *Heffner vs. Lynch,* 21 *Md. Rep.*

The mode of ascertaining the amount for which the final judgment can go, in all cases of interlocutory judgments whereby the right of the plaintiff is established, and the damages cannot be ascertained without the intervention of a jury, is prescribed in the Code, Art. 75, sec. 62. In this class of cases, the final judgment is entered upon the inquisition of the jury ; but where the parties fix the amount by agreement, and in that manner waive the inquisition,

or the cause of action is such that the Court may ascertain the amount without an inquisition, then the final judgment may be entered.

The judgment in question here, was clearly interlocutory; and the record of the case in which it was obtained shows that another and final judgment was entered on the 30th of October following. It was agreed by the parties on the 29th of October, that the judgment should be entered for $277,50, with interest from the 24th of October, 1862, and costs, and it was thereupon adjudged that the appellant should recover from the defendant the amount thus ascertained. This judgment could not, in the nature of things, relate back and take effect as of the date of the judgment by default; nor could the judgment by default, in establishing the jurisdiction of the Court and the simple fact of the plaintiffs' right to recover, be said or understood to constitute a recovery. Strictly speaking, there was no recovery until it was adjudged by the Court on the 30th of October; and the only privilege secured to the appellant by the judgment by default, was that of proceeding by inquisition or otherwise, to assess the damages and obtain a final judgment, without delay to the defendant.

Treating the judgment by default as interlocutory, merely, it could not operate as a lien on the real or leasehold property of the defendant. The reason why a judgment constitutes a lien on the property of the debtor, as stated in *Combs vs. Jordan*, 3 *Bland*, 284, and in *Eschbach vs. Pitts*, 6 *Md. Rep.*, 71, is that it clothes the judgment creditor with the right to make his debt out of the land of the judgment debtor; this right, on the one side, and consequent liability of the debtor's property on the other, constituting the lien. And it surely cannot be maintained that a creditor is clothed with any such right by an interlocutory judgment, where the amount to be recovered remains to be ascertained, and the recovery of it

to be adjudged by the Court. The cases of *Clements vs. Barry*, 11 *How.*, 398. *United States vs. Morrison*, 4 *Peters*, 136, and *Eschbach vs. Pitts*, are conclusive on this point. But further, the Act of 1861 declares in specific terms, that judgments shall be liens *for their amount* and *from their date*, and as we construe this provision, final judgments alone were contemplated. The decree of the Court below must be affirmed, with costs to the appellee.

*Decree affirmed.*

(Decided May 2nd, 1866.)