SULLINS G. SULLIVAN *v.* ANNA E. MILLER ET VIR

[No. 841, September Term, 1974.]

*Decided May 7, 1975.*

190

The cause was argued before THOMPSON and POWERS, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland, specially assigned.

*R. Roger Drechsler* for appellant.

*John F. King* for appellee Dr. W. Perry Arnold and *James E. Gray*, with whom was *John H. Mudd* on the brief, for appellee Dr. John D. Pound. No appearance and no briefs filed by appellees Anna E. Miller and Donald H. Miller.

THOMPSON, J., delivered the opinion of the Court.

Anna E. Miller and Donald H. Miller, her husband, filed suit in the Baltimore City Court for medical malpractice against Bon Secours Hospital, Dr. Sullins G. Sullivan, Dr. John D. Pound, Dr. W. Perry Arnold, Dr. Daniel G. Wehner and Dr. John E. Miller. Dr. Sullivan, the only appellant here, failed to file an answer to the suit resulting in the entry of a default judgment against him. The jury found Drs. Pound and Arnold to have been negligent and assessed damages totalling $400,300 against Drs. Sullivan, Pound and Arnold, jointly. Briefs have been submitted to this Court by Drs. Arnold and Pound. Mr. & Mrs. Miller have not submitted briefs. For convenience we will refer to Drs. Arnold and Pound as "the appellees". Dr. Sullivan alleges that the trial court erred in failing to grant his motion to strike out the default judgment and in the presentation of certain instructions and issues to the jury.

In order to put the case in proper focus we will quote a substantial portion of Count 2 of the Declaration italicizing

those portions which pertain particularly to Dr. Sullivan, the appellant:

"ANNA E. MILLER, by her attorney, Marvin Ellin, sues BON SECOURS HOSPITAL, a body corporate; JOHN D. POUND, M.D.; JOHN E. MILLER, M.D.; W. PERRY ARNOLD, M.D.; DANIEL G. WEHNER, M.D.; and SULLINS G. SULLIVAN, M.D., Defendants:

"The Plaintiff incorporates in this count those facts set forth in Count I hereinabove by reference thereto intending each and every allegation thereof to be deemed part hereof as if each and every sentence and paragraph were repeated, adding *that the history of the Plaintiff's prior stomach difficulty as well as the hospital records of her confinement at the Defendant Hospital from the period August 25, 1971 through September 3, 1971 were available and read by, or in the exercise of due care should have been read by, the Defendants in the instant count.*

"The Plaintiff alleges that she was reconfined at the Defendant Hospital on November 20, 1971, under the care of the Defendant Pound and the Defendant Wehner who was brought in by the Defendant Pound as a consultant. The Plaintiff's symptoms and complaints were the same as those symptoms and complaints made by the Plaintiff in her prior confinement from the period August 25, 1971 to September 3, 1971. The Plaintiff complained about the worsening of stomach pain and digestive difficulty from which she was suffering as well as a continuing nausea and other complaints referable to an upper gastrointestinal disorder. *Notwithstanding such complaints and prior history, the Defendants, and each of them, negligently failed to perform an upper GI study — this study would have revealed the fact that the Plaintiff was suffering from a simple gastric ulcer.*

*"Instead of performing the GI series which would have been a safe conservative and non-injurious method of determining the Plaintiff's condition, the Defendants negligently subjected the Plaintiff to a series of unnecessary risks involving invasive and potentially injurious tests which were not indicated and which, through negligent performance, resulted in tragic, permanent and disabling injuries to the Plaintiff and her husband.*

"It is alleged that, ignoring all safe, non-invasive and conservative methods which existed to arrive at a correct diagnosis of the Plaintiff's condition, *the Defendants caused an aortogram to be performed on the Plaintiff to confirm the existence of what was negligently believed to be an abdominal aortic aneurysm (weakness in the wall of an artery causing it to bulge) as the cause of the Plaintiff's stomach difficulty.* The Plaintiff was subjected to a hazardous procedure which the Defendant W. Perry Arnold, M.D. had been specifically cautioned to avoid. In addition, he failed to exercise the usual standards of medical care in the insertion of a catheter into the Plaintiff's right femoral artery. As a result, dye injected through the catheter was caused to dissect into the layers of the aortic wall causing a tear of the aortic wall by negligent and injurious insertion.

"It is further alleged that the insult or injury to the right femoral artery caused by the negligence of the Defendant Arnold initiated an abnormal clotting of the blood in the artery causing a life-threatening and dangerous condition to result in the Plaintiff's right leg — to wit: a blocking of blood supply to the right leg by the clotting which was produced by the trauma by the catheter.

"The Plaintiff avers that the presence or absence of an abdominal aneurysm could have been established by a safe method of x-ray study which

would have revealed such a condition without subjecting the Plaintiff to the jeopardy of inserting a catheter into a main artery in a retrograde fashion. Such procedure was unnecessary, contraindicated, and not in keeping with the usual standards of medical care in the community.

"Following the development of clotting in the Plaintiff's right femoral artery, it was necessary for her to undergo surgical removal of such clots — this surgery performed on her by the Defendant Miller.

"Notwithstanding the injury inflicted upon the Plaintiff by the Defendant Arnold and the Plaintiff's predisposition to clotting caused by injury to the femoral artery, the Defendant Arnold with the Defendant Pound participating and concurring in such action, negligently followed the above recited procedure with an attempt to thread a catheter through the artery located under the left armpit (axilla) sliding the catheter through the artery in an effort to inject contrast material into the aortic region. During this attempt (November 26, 1971), the Defendant Arnold negligently produced a perforation of the aorta by negligent and reckless manipulation of the catheter. Because of the injury to the aorta, the Plaintiff bled internally, causing bleeding into the mediastinal area (between the lungs).

"Following this, the Plaintiff began to experience excruciating pain and mental anguish and had difficulty in breathing, necessitating endotracheal intubation or the placing of a hose into the Plaintiff's trachea to insure sufficient oxygen to sustain her. The Plaintiff's blood pressure dropped, she developed shock, and required additional emergency and dangerous treatment with intravenous solucortef and aminophyllin. Additionally, because of the clotting developing in

her right leg, the Plaintiff began to develop numbness in the right foot — the denial of blood supply to the right foot being caused by continuing clotting in the right femoral artery resulting from the negligence aforesaid.

"Later in the day of November 26, 1971, because of the continuation of reoccurring thrombosis (clotting) of the right femoral artery, it was necessary for the Plaintiff to undergo a thrombectomy, a surgical procedure for the removal of such clots, this necessitating the incising into the right groin area. The Plaintiff avers that this surgical procedure was negligently performed and improperly planned by reason of the failure to first perform an arteriographic study to discover the location and degree of clotting within the femoral artery so that adequate and proper surgery could be performed — this procedure performed by the Defendant Miller with the assistance of duly authorized Defendant Hospital personnel and the concurrence of the Plaintiff's physician, the Defendant Pound, and the Defendant Wehner. It is alleged that the only ailment which required treatment was the nonsurgical care of a gastric ulcer which was negligently ignored, and that all other major medical problems were the result of negligent medical care.

"It is alleged that following the aforesaid thrombectomy on November 26, 1971, that, because of massive injury to the Plaintiff's body, the clotting process continued creating a recurrent blockage of the superficial femoral artery — this denying sufficient blood supply to the right lower extremity. It is alleged that again no arteriographic study was done on the Plaintiff's right leg to determine the location and degree of the clotting process to guide and advise the surgeon (the Defendant Miller and duly authorized personnel of

the Defendant Hospital with the concurrence and approval of the Plaintiff's treating physician, the Defendant Pound, as well as the Defendant Wehner), such study a compelling, necessary and usually employed method in cardiovascular surgery employed by the medical and hospital community in all major cities of the United States, including Baltimore, Maryland. With incomplete and negligently performed presurgical study given, the Plaintiff was subjected to a second thrombectomy on November 27, 1971.

"It is alleged that notwithstanding pre-existing history, complaints, symptoms, and evidence which existed in the Plaintiff's hospital record and as recited by the Plaintiff, the Defendant Miller and the *Defendant Sullivan, on November 27, 1971,* with the concurrence of the remaining Defendants and the assistance of duly authorized medical and surgical personnel and the concurrence and recommendation of the attending physicians, the Defendant Pound and the Defendant Wehner, *negligently, unnecessarily and against indication for such procedure, performed a laparotomy (abdominal exploratory surgery) and caused a subtotal gastrectomy to be performed upon the Plaintiff resulting in the removal of 75% of her stomach.*

*"The Plaintiff avers that following the aforesaid procedure performed upon her, all necessitated by the negligence of the Defendants, and each of them, that the Plaintiff continued to develop blood clots in her femoral artery preventing the adequate flow of blood to the right leg which caused gangrene of the right foot to develop.*

*"The Defendants again negligently failed to perform arteriographic studies in an effort to establish the extent of obstructing material in the right femoral artery, and instead, on December 4,*

> *1971, a duly authorized surgeon of the Defendant Hospital, acting under the concurring opinion and recommendation of the Defendant Pound, the Defendant Wehner, the Defendant Miller and the Defendant Arnold, amputated the Plaintiff's right leg because of reoccurring thrombosis or clotting with resultant gangrene and death of the right leg."*

The remainder of Count 2 alleged damages suffered by reason of the negligence of the Defendants. Count 3 alleged hospital expenses were incurred by Mr. Miller as the result of the defendants' negligence. Count 4 alleged damage to the marital relationship of Mr. & Mrs. Miller. Count 1 pertained to the Bon Secours Hospital.

## I Instructions Pertaining to Damages Resulting from the Loss of the Leg

Dr. Sullivan alleges the trial court erred in failing to instruct the jury that the evidence showed that his negligence did not contribute in any way to the loss of Mrs. Miller's leg. He argues that although the judgment established his duty to the plaintiffs and his failure to discharge the duty, as well as some loss therefrom, it necessarily follows that the evidence must show what damages in fact flowed from the negligence. The appellees argue, however, that the default judgment established every element necessary to determine the defendant's liability except the amount of damages; that a defendant in default cannot introduce evidence to contradict liability; that it would have been improper for the trial judge to have instructed the jury that Dr. Sullivan was not responsible for the loss of the leg because a finding of liability included a finding of damage proximately caused by Dr. Sullivan; and that proximate cause is not an issue in the inquisition of damages after a default judgment. In our view, reason and authority do not completely support either argument. It is apparent that after a default judgment a plaintiff cannot prove damages which resulted from negligence other than that alleged in the declaration, that is, proximately caused

by the alleged negligence. It is equally apparent that we must look to the declaration and not to the evidence to determine Dr. Sullivan's negligence. It takes but a glance at the declaration to see that, rightly or wrongly, it alleged that Dr. Sullivan participated with the other defendants in the acts of negligence which led to the loss of the leg. The trial judge properly refused the instruction concerning Dr. Sullivan's responsibility for the loss of the leg.

Dr. Sullivan relies on *Smith v. Dolan*, 170 Md. 654, 185 A. 453 (1936), in which the Court said:

> "The plaintiff sued for injuries sustained in a collision by one of the defendants' taxicabs with his automobile on January 28th, 1933. The judgment by default admits the occurrence of the accident, some injury of the plaintiff, and the defendants' liability for such injuries as were caused by the collision. 2 *Poe's Pl. & Pr.* secs. 369, 372; *Betz v. Welty & Co.*, 116 Md. 190, 196, 81 A. 382. All the jury had to pass on was the question of damages sustained by the plaintiff as a result of the defendants' admitted negligence. By statute, Code, art. 75, sec. 94, [now Md. Rule 648] when the proceeding is merely an inquisition, the evidence is taken 'in open court in the same manner and under the same regulations as in other jury trials,' so that the same rules apply to the admissibility and relevancy of evidence as in a regularly contested case. It will not, however, be regarded as reversible error, even if inadmissible and irrelevant, unless its effect is to admit evidence of damage not traceable to the alleged negligence. *Betz v. Welty & Co., supra.*" *Id.* at 657.

The Court then proceeded to examine the evidence for the purpose of showing whether or not there was a causal connection between the accidental injury and the damages suffered saying:

> "[T]he damages were testified to by the plaintiff and several other witnesses, and their testimony

not contradicted, and there was a reasonable basis for the inference, as reflected by the verdict, that there was a *causal connection between the accidental injury of the plaintiff and his physical condition from that time to the day of trial.*" *Id.* at 659. (Emphasis added)

It will be observed that in *Smith v. Dolan, supra,* the Court looked at the evidence solely to determine what damages flowed from the negligent act, not to determine, as Dr. Sullivan would have us do, whether or not the defaulting defendant was negligent, with respect to the leg.

Dr. Sullivan also cites *Betz v. Welty,* 116 Md. 190, 81 A. 382 (1911); *Millison v. Ades of Lexington,* 262 Md. 319, 277 A. 2d 579 (1971); *Ruella v. MacCauley,* 220 Md. 461, 154 A. 2d 715 (1959) and *Forrester v. Sisco,* 49 Md. 586 (1878). None of these cases support Dr. Sullivan's argument. We will discuss two of them hereinafter.

The appellees cite *Perioti v. Williams,* 258 Md. 663, 267 A. 2d 114 (1970) and *Burns v. Goynes,* 15 Md. App. 293, 305, 290 A. 2d 165 (1972), *cert. denied,* 410 U. S. 938, to illustrate the distinction between liability and negligence, pointing out that the Courts have said that a trial court cannot direct a verdict, even though negligence exists as a matter of law unless, of course, there is also no contest as to damages. They rely, however, on *Millison v. Ades of Lexington, supra,* which held that a defaulting defendant would not be permitted at an inquisition hearing to introduce a clause in the lease which placed the responsibility for damage to personal property on the plaintiff because liability was settled by the default judgment. As we have indicated, neither this case nor any that follow support the proposition that the plaintiff does not have to establish at the inquisition hearing that the damages resulted from the negligent injury alleged in the declaration.

Appellees also rely on *Betz v. Welty, supra,* in which the Court refused to permit a defaulting defendant to offer evidence at the inquisition that she was not the Mrs. Betz named in the suit and did not incur the bill alleged. To the

same effect, see *Heyward v. Sanner*, 86 Md. 19, 37 A. 798 (1897), in which the Court said:

> "That a judgment by default fixes the liability of the defendant and establishes the right of the plaintiff to recover some amount to be afterwards determined by an inquisition of damages cannot now be questioned. This Court has said in the case of *Green v. Hamilton*, 16 Md. 329, that a judgment by default 'if regularly entered is as binding as any other, as far as respects the power and jurisdiction of the Court, in declaring that the plaintiff is entitled to recover, though the amount of the recovery in some cases remains to be ascertained by a jury'. Like every other judgment, *it is conclusive of every fact necessary to uphold it. Freeman on Judgments*, Sec. 330, and authorities there cited. *Cooper v. Roche*, 36 Md. 565; *Davidson v. Myers*, 24 Md. 555.
>
> * * * *
>
> "But if in thus repelling the idea of express malice, there should be testimony from which, if there were no judgment, the jury could find the communication to be privileged, yet the defendant could not be entitled to a ruling declaring it to be privileged, because by the judgment the question of legal malice has been definitely settled against him. To rule under these circumstances the words were privileged, is equivalent to an instruction that there is no malice, although the judgment by default conclusively settles that there is. This is the necessary result, because the legal effect of declaring the words to be privileged is to repel the presumption of malice of any kind arising from their utterance. *McBee v. Fulton*, 47 Md. 427. In other words, to so rule would be to declare the defendant was justified in speaking the words, and if he was there could be no recovery at all, since malice express or implied is a necessary ingredient

in an action of slander. *Dicken v. Shepherd,* 22 Md. 418. This could not be done in this case, because, as we have said, the legal malice is conclusively settled by the judgment." 86 Md. at 21-22.

The Court there held that it was entirely proper for the defendant to offer evidence of the lack of express malice for the purpose of mitigating damages but we point out again this case is not in any way authority for the proposition that the plaintiff does not have to prove damages which proximately resulted from the negligent acts alleged. Nor is there anything in *J.C. Penney Co. v. Harker,* 23 Md. App. 121, 326 A. 2d 228 (1974), which is contrary to the views expressed herein. In that case we simply held that a trial judge had discretion to set aside a judgment entered on inquisition even though it did not have the power at the time to upset the default judgment as to liability.

It is harsh to prohibit Dr. Sullivan from showing that he did not order the tests as alleged, nor have an opportunity to read the hospital record and diagnose the ulcer condition, and thus, in fact, that he bore no responsibility for the loss of the leg, but allowing such a showing would be contrary to the long line of cases in Maryland and, indeed, elsewhere which have clearly held that the entry of a default judgment fixes liability and leaves only the amount of damages to be determined. To permit the Doctor and anyone else who so desired, to ignore judicial process and answer a suit at his whim would destroy our entire judicial scheme for the orderly disposition of cases.

## II *Instructions as to Nominal Damages*

Dr. Sullivan argues that he is not jointly liable under the evidence and therefore there was error in the trial court's refusal to grant an instruction permitting the jury to return a verdict of nominal damages. We note that, once again, Dr. Sullivan refers to the evidence rather than to the declaration which fixed his liability. As has been observed, in the declaration it was alleged that Dr. Sullivan jointly participated in several acts of negligence which led up to the

removal of both the leg and the stomach. Under the cases heretofore cited he cannot, after the default judgment, contest his joint liability for those acts of negligence but can only contest the amount of damages.

We do not regard the out of state cases cited by Dr. Sullivan to be in point because in the instant case joint participation in several acts of negligence was fixed by the default judgment. The single Maryland case which he cites to support his argument is not in point for the same reason. *Kyte v. McMillion*, 256 Md. 85, 259 A. 2d 532 (1969) held that the liability of the hospital was separate from the liability of a negligent motorist which caused the original accident. The Court was careful to point out that the injuries were peculiarly separate and divisible because the hospital's only negligence consisted of administering to the plaintiff an improper type of blood in a transfusion which could cause injury to the plaintiff only if she later became pregnant. The Court has distinguished *Kyte* from others holding successive tortfeasors jointly liable. *Bell v. Allstate Insurance Company*, 265 Md. 727, 291 A. 2d 478 (1972). *See also, Trieschman v. Eaton*, 224 Md. 111, 166 A. 2d 892 (1961). These cases clearly indicate that all who participate in negligent acts, even though successive, are equally responsible for the ultimate damage where the damage is not divisible as in *Kyte v. McMillion, supra.*

The court in the instant case instructed the jury in part as follows:

> "You are specifically instructed, not to concern yourselves with whether or not Dr. Sullivan was or was not negligent, for the reasons I have just stated. Thus your only consideration as to Dr. Sullivan is to determine whether his negligence, as one of the treating doctors of Mrs. Miller, caused, or contributed to cause, injuries and damages to her. Because there is already a judgment against Dr. Sullivan, you need only fix the amount of that judgment, should you find that the defendant Sullivan's negligence produced injuries and damages to the plaintiff."

Under the peculiar posture of the case the instruction was at least as favorable as Dr. Sullivan could require.

### III Denying Motion to Strike
### Out the Default Judgment

In Maryland it is settled that a default judgment at law, like any other which has been entered for a period of more than 30 days, can be stricken only by a showing of fraud, mistake or irregularity. *Owl Club v. Gotham Hotels*, 270 Md. 94, 310 A. 2d 534 (1973); *Maggin v. Stevens*, 266 Md. 14, 291 A. 2d 440 (1972); *Capobianco v. Gordon*, 19 Md. App. 662, 313 A. 2d 517 (1974). Md. Rule 625 a provides:

> "For the period of thirty days after the entry of a judgment, or thereafter, pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in cases of fraud, mistake or irregularity."

The only "fraud, mistake or irregularity" which Dr. Sullivan alleges is that it was erroneous to enter a default judgment against one defendant who is alleged to be jointly liable with others. To support his argument he cites no Maryland cases and we have found none on point. Assuming, without deciding, that the cases cited would be the law of Maryland, our analysis of them shows that they do not support the appellant's thesis.

The principal case replied on by Dr. Sullivan is *Frow v. De La Vega*, 82 U. S. (15 WALL) 552 (1872), in which the Supreme Court of the United States addressed the problem as follows:

> "The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant has

merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike — the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Id.* at 554.

It will be observed that the procedures set out by the Supreme Court were precisely what occurred in the instant case except that Dr. Sullivan was permitted to take some part in the hearing with respect to damages. It is likewise apparent that in the other cases cited by Dr. Sullivan the courts were concerned with the entry of a final judgment assessing damages instead of a default judgment determining liability. Those cases are *Reliance Insurance Companies v. Thompson-Hayward Chemical Co.*, 519 P. 2d 730 (Kan. 1974); *Bergren v. Adams County*, 8 Wash. App. 853, 509 P. 2d 661 (1973); *Diamond National Corporation v. Thunderbird Hotel*, 454 P. 2d 13 (Nev., 1969); *Marc Bellaire, Inc. v. Fleischman*, 8 Cal. Rptr. 650 (1960).

We see no error in the refusal to strike out the default judgment.

*Judgments affirmed.*
*Appellant to pay the costs.*