Catherine A. RICHARDS,
et al., Plaintiffs,

v.

Steven R. FREEMAN,
et al., Defendants,

v.

United States of America, et al.,
Third–Party Defendants.

No. JFM–01–2571.

United States District Court,
D. Maryland.

Jan. 7, 2002.

Diane Martin Littlepage, Glen Burnie, MD, for Edward Gottschalk.

Donna Preston Sturtz, Miles and Stockbridge, PC, Baltimore, MD, for Sharon Henry.

Jennifer Lilore Huesman, Assistant United States Attorney, Baltimore, MD, for Peter Allen.

Charles A. Arcodia, Towson, MD, for Richard Stainer.

## MEMORANDUM

MOTZ, District Judge.

The third-party defendant, the United States of America, has filed a motion to dismiss the third-party complaint filed against Dr. Peter Allen by one of the original defendants, Steven Freeman.[1] Freeman alleges that the United States is liable for indemnity and contribution for any amount that Freeman may be found liable to the Plaintiffs. Specifically, Freeman—who is alleged by Plaintiffs to have

---

1. The United States has also moved to be substituted as third-party defendant for Dr. Allen. I will grant that motion.

been responsible for an automobile accident involving their deceased mother, Mary Ann Salmon—asserts in the third-party complaint that any injury sustained by Salmon in the accident was not the proximate cause of her death. Rather, according to Freeman, Salmon's death resulted from medical malpractice committed by several physicians, including Dr. Peter Allen, who was then employed by the United States Army.[2] For the reasons that follow, I will grant in part and deny in part the United States' motion.

## I.

On September 19, 1997, a vehicle driven by Richard Stainer collided with a vehicle driven by Freeman at the intersection of Maryland Routes 32 and 198 in Anne Arundel County. Salmon, a passenger in Stainer's vehicle, allegedly suffered orthopedic injuries during the accident and was taken to the University of Maryland Hospital. Several doctors at the hospital provided medical treatment to Salmon following the accident. Salmon eventually died in the hospital, approximately five months after the accident.

On July 7, 2000, Salmon's surviving children filed a wrongful death suit in the Circuit Court for Baltimore City ("Baltimore City action") against Dr. Peter Allen and several other medical care providers based on medical malpractice. Plaintiffs alleged that, although the doctors treating Salmon repaired her orthopaedic injuries, she developed a gastrointestinal bleed during her hospitalization. On October 2, 1997, Salmon underwent an exploratory laparotomy during which Dr. Allen, Dr. Saridakis, and Dr. Henry transected the common bowel duct. Plaintiffs allege that the laparotomy procedure was performed

negligently. This alleged negligence was discovered during an abdominal procedure that occurred on October 19, 1997. Salmon allegedly continued to suffer abdominal injuries and on February 12, 1998, Dr. Militello, Dr. Goodsell, Dr. Scalea, Dr. Benoit, Dr. Martz, Dr. Rabinowitz, Dr. Reynolds, Dr. Testerman, Dr. Wiler, and Dr. Henry attempted to place chest tubes in Salmon, causing a right arterial tear in her heart. The plaintiffs allege that this procedure was also performed negligently. As a result of this tear, Salmon died on February 12, 1998.

The Baltimore City action was removed by Dr. Allen, an employee of the United States Army, to the United States District Court for the District of Maryland on February 23, 2001. Dr. Allen moved for dismissal of all claims against him due to the plaintiffs failure to comply with the notice provision of the Federal Tort Claims Act. I granted the motion to dismiss and remanded the case to the Circuit Court for Baltimore County to allow the claims to proceed against the remaining defendants.

On July 26, 2000, Salmon's surviving children filed a second wrongful death suit in the Circuit Court for Baltimore City against Steven Freeman and Richard Stainer. Plaintiffs alleged that the negligence of Freeman and Stainer resulted in the accident leading to Salmon's orthopaedic injuries. On September 27, 2000, Judge Gordy of the Circuit Court for Baltimore City transferred the case to the Circuit Court for Anne Arundel County, Maryland.

On April 24, 2001, Freeman filed a third-party complaint against the medical care providers named in the first wrongful death suit, including, Dr. Allen.[3] Freeman

---

**3.** On May 31, 2001, Stainer filed in the Circuit Court for Anne Arundel County a cross-claim against all of the health care providers,

is seeking indemnity and contribution if he is found liable to the plaintiffs for the additional harm caused by the subsequent medical care of Salmon by the doctors.

## II.

The United States makes three arguments for dismissing the contribution and indemnity claims. First, the United States argues that Freeman's third-party complaint should be dismissed because it was not filed in accordance with Maryland Rule of Civil Procedure 2–332(e). Second, the United States argues that the indemnity claim should be dismissed because the plaintiffs allege that Freeman was actively negligent. Third, the United States argues that the contribution claim should be dismissed because Freeman does not allege that the United States and Freeman are liable for the same injury.

## A.

■ The United States first argues that Freeman's third-party complaint was untimely filed. State law governs pre-removal conduct. *See Eccles v. National Semiconductor Corp.,* 10 F.Supp.2d 514, 519 (D.Md.1998). Thus, the Maryland Rules of Civil Procedure apply in determining the timeliness of the third-party complaint. Maryland Rule 2–332(e) states in relevant part:

> Time for Filing. If a party files a third-party claim more than 30 days after the time for filing that party's answer, any other party may file, within 15 days of service of the third-party claim, a motion to strike it or to sever it for separate trial.... The court shall grant the mo-

tion unless there is a showing that the late filing of the third-party claim does not prejudice other parties to the action. *Id.; see also Garrett v. State,* 124 Md.App. 23, 720 A.2d 1193, 1196 (1998) (noting that the burden is on the non-moving party to show that the other parties are not prejudiced). In this case, the original complaint against Freeman was filed on July 26, 2000. Freeman did not file the third-party complaint until April 24, 2001, approximately six to seven months late. Rule 2–332(e) places the burden on Freeman to show that the United States is not prejudiced by the delay. Freeman has met this burden.

■ The only suggestion of prejudice is the United States' argument that "discovery has taken place *without* the involvement of Dr. Allen." (Third–Party Def.'s Rep. at 3) (emphasis in original).[4] However, during the seven-month delay, there were no depositions taken and any written discovery, including answers to interrogatories and requests for production of documents, has been made available to the United States. (*See* Third–Party Pl.'s Opp'n. at 6–7.) Since April 24, 2001, the United States has been on notice of the third-party claim and should have participated in any further discovery that has been conducted or sought a stay. Accordingly, the claims will not be dismissed for failure to comply with the requirements of Maryland Rule 2–332(e).

## B.

■ Second, the United States argues that Freeman's indemnity claim fails be-

---

except Dr. Allen, seeking indemnity and contribution.

4. Additionally, prejudice might exist if a party believes it is clear of all potential liability, only to have a late complaint filed. That is not the case here. Dr. Allen knew as of July

7, 2000 that he was being sued for medical malpractice by the plaintiffs. I did not dismiss their claim against Dr. Allen until May 24, 2001, a month after the claim for contribution and indemnity had been made by Freeman.

cause indemnity is not available to active tortfeasors. "A right to indemnity may arise 'where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages.'" *Kelly v. Fullwood Foods, Inc.*, 111 F.Supp.2d 712, 714 (D.Md. 2000) (*quoting Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 595 (D.Md.1985)). In Maryland, the "active/passive" negligence rule applies, by which a defendant whose negligence was "passive" may seek indemnity from a defendant whose negligence was "active." *Id.; Franklin v. Morrison*, 350 Md. 144, 711 A.2d 177, 185–87 (1998) ("It is well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification."); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md.App. 217, 674 A.2d 106, 135 (1996). To determine whether a tortfeasor's negligence is active or passive, courts refer to the plaintiff's complaint against the defendant seeking to implead the third party. *Pyramid*, 606 F.Supp. at 596; *see also Kelly*, 111 F.Supp.2d at 714. If the alleged conduct attributed to the third-party plaintiff is active negligence, or if it is clear from the complaint that the third-party plaintiff's negligence would only arise from proof of active negligence, then there is no valid claim for indemnity. *Kelly*, 111 F.Supp.2d at 714; *Pyramid*, 606 F.Supp. at 596.

■ In this case, the plaintiffs allege that Freeman and Stainer:

> were negligent in that they failed to operate their motor vehicles in a careful, cautious and lawful manner, were inattentive to their driving; failed to yield the right-of-way; failed to use due care and caution to avoid a collision; failed to reduce their speed or to stop when approaching the intersection; and were

otherwise careless, reckless and negligent.

(Third–Party Def.'s Ex. 2 at ¶ 12.) Thus, the alleged negligence of Freeman can only be viewed as active. Accordingly, Freeman is precluded from seeking indemnity from the United States, and that claim will be dismissed.

#### C.

Third, the United States argues that Freeman's contribution claim fails because Freeman does not allege that the United States and Freeman are liable for the same injury. In Maryland, contribution is available among joint tortfeasors under the Uniform Contribution Among Tort–Feasors Act ("UCATA"). Md.Code Ann. (1974, 1998 Repl.Vol.), Cts. & Jud.Proc. §§ 3–1401, *et seq.* The UCATA provides that a joint tortfeasor "means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." *Id.* at § 3–1401(c). Enactment of the UCATA alleviated "the unfairness of allowing a plaintiff the power to pick and choose whom to sue for damages ... by providing the defendant with the right to implead a responsible third party to share in the liability." *Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 756 A.2d 526, 534 (2000).

■ The United States focuses its arguments on whether the same causes of action are asserted against it and Freeman. (*See* Third–Party Def.'s Mem. at 10–11.) However, "[c]ontribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds." *Parler*, 756 A.2d at 534 (citations omitted). Additionally, the tortious

conduct among joint tortfeasors may be concurrent because concerted negligence is not required for there to be common liability. *See id.; see also Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003, 1005–06 (1987) ("It is a general rule that a negligent actor is liable not only for harm that he directly causes but also for any additional harm resulting from normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner."). The Maryland Court of Appeals has noted that:

> For a right to contribution to exist among tortfeasors guilty of negligence, it is not ordinarily essential that there be joint negligence in the sense that all the wrongdoers fail in the performance of an identical duty; contribution may be had among independent tortfeasors whose combined negligence ... concur and contribute to the same injury.

*Parler,* 756 A.2d at 535; *see also Trieschman v. Eaton,* 224 Md. 111, 166 A.2d 892, 894 (1961) (stating in dicta that "[t]he definition of the [UCATA] making those jointly or severally liable for the same injury literally embraces successive wrongdoers liable for the same injury even though one may also be liable to the injured person for additional damages").

The United States cites *Kyte v. McMillion,* 256 Md. 85, 259 A.2d 532 (1969), for the proposition that there cannot be contribution because the parties did not combine to produce the wrong, but only share a common element of liability. In *Kyte,* the plaintiff was injured in an automobile accident and taken to the hospital because he suffered broken bones. While at the hospital, the plaintiff was given a blood transfusion. As a result of a nurse making an error during the transfusion, the plaintiff suffered injuries affecting her child-bearing capacity. *Id.* at 533–34. The plaintiff filed suit against the hospital and the

nurse and a settlement, which included a release clause, was reached between the parties. The plaintiff then sued the driver who claimed that the release in the settlement also applied to him. This argument was rejected and the action against the driver was allowed to continue because the nurse and hospital were subsequent tortfeasors that did not cause the same injury as the driver. *Kyte,* however, does not govern this case. As the Maryland Court of Special Appeals has noted: "[t]he Court [in *Kyte* ] was careful to point out that the injuries were *peculiarly* separate and divisible ... The Court has distinguished *Kyte* from others holding successive tortfeasors jointly liable." *Sullivan v. Miller,* 26 Md. App. 189, 337 A.2d 185, 191 (1975) (emphasis added).

██ Since the subsequent tortfeasors, i.e., Freeman and the United States, may be held jointly liable for the same injury and the same damages, a contribution claim may exist as a matter of law. *See Parler,* 756 A.2d at 534; *Morgan,* 523 A.2d at 1008 (stating that under the UCATA, an original tortfeasor and a negligent health care provider could be considered either concurrent tortfeasors concurring in producing the additional harm or successive tortfeasors liable under a separate cause of action); *Sullivan,* 26 Md.App. at 201, 337 A.2d 185 (stating that successive tortfeasors can be equally responsible "for the ultimate damage where the damage is not divisible"). Accordingly, the United States' motion will be denied on the contribution claim.

A separate order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendant's motion to substitute the United States as third-party defendant for Dr. Peter Allen is **Granted;**

2. United States is substituted as third-party defendant for Dr. Peter Allen;

3. Defendant's motion to dismiss is **Granted in part** and **Denied in part;** and

4. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.